READ ET AL. *v.* BECZKIEWICZ, TREASURER, ET AL.

[No. 27,114. Filed February 1, 1939. Rehearing denied February 27, 1939.]

366

*Arnold, Chipman & Degnan,* and *Harry Brownstein,* for appellants.

*Edwin Hunter, Farabaugh, Pettengill & Chapleau, Jones, Obenchain & Butler, Francis Jones, Samuel Feiwell,* and *Edmund A. Willis,* for appellees.

FANSLER, J.—This case arose out of the administration of the public improvement law, commonly known as the Barrett Law, in the City of South Bend. At the time the action was commenced there were bonds outstanding under 947 separate public improvement resolutions and corresponding assessment rolls. The unpaid bonds and coupons aggregate approximately $4,000,000. On February 21, 1938, the Treasurer of St. Joseph County, ex officio treasurer of the City of South Bend, who was charged with the duty of making disbursements under the Barrett Law, had available for distribution approximately $300,000, and on that date mailed notices of distribution under a method which he assumed to be the statutory one. On that date this action was begun, seeking to enjoin a distribution of the funds as contemplated. The treasurer thereupon filed a cross-complaint, asking the court to determine certain controversies existing among the multitude of bondholders concerning

the administration of the funds, and prayed the court's instructions and a determination of the rights and liabilities and duties of the several persons interested in the funds, and that the court retain continuous jurisdiction to direct the administration of the funds. All of the parties were brought in or appeared and filed pleadings on behalf of themselves and others similarly situated, and thus there was presented to the court a multitude of conflicting contentions.

Assessments on all but four of the assessment rolls were delinquent.

A comparatively small amount of the bonds outstanding were issued against specific property. The funds collected on account of the assessments responsible for these bonds had been segregated and earmarked. The transactions were identifiable, and the balances in the funds, together with the unpaid assessments under the specific lien rolls, were equal to the unpaid specific lien bonds.

All other bonds were issued under section 48-2713 Burns' Ann. St. 1933, section 12529 Baldwin's Ind. St. 1934, in series on each improvement, and the aggregate of such bonds issued under each improvement resolution is a lien upon the total of the property upon which assessments were waived under the resolution. Some of the bonds last referred to were issued before March 16, 1929, the effective date of chapter 211 of the Acts of 1929 (Acts 1929, p. 705), and some between March 16, 1929, and June 30, 1931, the effective date of chapter 99 of the Acts of 1931 (Acts 1931, p. 407), and the remainder between June 30, 1931, and November 29, 1932. The acts referred to are both amendatory to the Barrett Law.

Bonds in which prepaid assessments were invested at par were at the time of investment, and are now, worth less than par. Deposits in public depositories

were lost. Money paid in on assessments was misapplied, or there was delay in application to the payment of bonds because of accounting errors. Funds collected under one assessment roll were applied to the redemption of bonds under another. There are overlapping assessments for different improvements on many of the items of property subject to lien. There was controversy as to the application of funds where it is apparent that the total funds available for distribution and the probable collections will not be sufficient to redeem all of the bonds outstanding on the particular project. Many other questions are presented.

The facts were found specially and at great length, and no complaint is made concerning the findings. There are 25 conclusions of law, most of which are subdivided into several sections, covering different aspects of the controversy, so that the actual conclusions number well over 100. Errors and cross-errors as to each conclusion of law are assigned by the appellants and appellees, but in the briefs only 44 items of the conclusions are attacked. The decree is in 25 paragraphs, many of them subdivided, and covers more than 25 single-spaced pages in the brief.

It must be apparent that a discussion of each separate item of the conclusions involved would extend the opinion to unusual length, and it is unnecessary, since a consideration of the provisions of the statute and the principles involved will indicate this court's conclusion respecting the alleged errors.

By enactments, frequently changed by amendment and generally referred to as the Barrett Law, the Legislature has authorized cities to assess benefited property for the cost of local improvements. The levy of the assessments is an exercise of the power of taxation, and the assessments are a tax upon the property. Provision is made for the payment of

assessments in installments. The property owner may take advantage of this privilege by signing a request, with a waiver of the right to contest the regularity of the proceedings, and agreeing to become personally liable for the amount of the assessment. When waivers are signed bonds are issued by the city and in the name of the city. By one method, separate bonds are issued against each item of property assessed for the amount of the assessment, and such bonds are a specific lien upon the particular item of property, and no other property. These bonds have coupons attached, maturing each six months for the ten-year period. One coupon each year represents an installment of one-tenth of the principal amount of the assessment with interest, and the alternating coupons call for six months' interest upon the balance of principal unmatured. There is another statutory method, under which most of the bonds here involved were issued, by which bonds in the aggregate amount of all deferred assessments are issued and become a lien upon the aggregate of all of the property involved in the improvement resolution upon which the privilege of deferred payments has been taken. No particular bond is a lien upon any specific item of the property, but all of the bonds are secured by a lien upon all of the property. The bonds were issued in conformity with the statute, which provides that: "Such bonds shall be issued in denominations not exceeding five hundred dollars ($500) each and shall be issued in ten (10) equal series, one (1) series payable each year. . . ." Section 48-2713 Burns' Ann. St. 1933, section 12529 Baldwin's Ind. St. 1934, *supra*. Each bond has attached coupons evidencing semi-annual interest to maturity. Assessments with interest and penalties for delinquency are payable to the city, through its collecting officer; in this case, the county treasurer, who is ex officio city treasurer. Primarily these bonds are payable out of

funds actually paid to and collected by the city on account of the assessments by reason of which the bonds were issued; and, by certain amendments to the statute, there are certain additional liabilities on the part of the city, but the bonds are not the general obligation of the municipality.

Under the provision of section 4, chapter 99 of the Acts of 1931 (Acts 1931, p. 407, section 48-4404 Burns' Ann. St. 1933, section 12534 Baldwin's Ind. St. 1934), *supra*, any property owner, who has signed a waiver and secured the right to pay an improvement assessment upon his property in deferred payments, may at any time after the first year pay up his entire assessment and thus discharge the lien upon his property. The act provides that such prepaid assessments shall constitute a special fund, to be held in trust by the city for the owners of bonds issued against the assessments, and that the city shall promptly invest and reinvest such funds "in bonds similar in kind and character at par, for the benefit of said city or town as trustee for the holders of the bonds and interest coupons upon which such prepayments were made, and the city or town shall become liable to such holders in the amount of the prepayment thereon made with the interest on the principal thereof." It may be pointed out here that, although the fund is referred to as a trust fund to be held by the city as trustee, the relationship between the city and the bondholder is not that of trustee and *cestui que*, for the city becomes liable as principal for the payment of the amount of the prepaid assessment with interest, and not merely for the proceeds of the bonds in which the prepaid assessments are invested. In other parts of the statutes similar expressions are used, which, if isolated from the whole body of the law, would seem to indicate that, in collecting and holding funds paid upon assessments, the city acts as a

trustee, and that the fund is a trust fund; and the trial court and most of the parties seem to have adopted that view. But, in the light of the provisions of the law as a whole, it is seen that there is no direct relationship between the holder of the bond and the owners of the assessed property in respect to assessments which are paid. These assessments, as pointed out above, are taxes, and payments are received by the city as payments of other taxes are received. When assessments are paid to the city, the lien upon the property is to that extent discharged, and the city becomes the principal obligor upon the bond to the extent of the payments of assessments received by it.

In *City of Bloomington* v. *Citizens National Bank* (1914), 56 Ind. App. 446, 105 N. E. 575, it was contended by the city that it was not liable for Barrett Law assessments collected and unlawfully converted by its treasurer. It was held that when assessments are collected the city becomes primarily liable on the bonds for the amount of the collections, notwithstanding the misappropriation by its officer. The opinion is soundly reasoned and must be approved. The determination of this question solves many of the problems here involved. The bondholder has no control over the funds paid to the city. Once they are received, the city becomes the principal upon the bond, and the funds are the property of the city. In collecting the assessments the city does not act as the agent of the bondholder. It does not hold the funds as a mere agent. In issuing the bonds it binds itself by contract, and the statute becomes part of the contract, and under the statute the city becomes liable to the extent of collections made. In levying the assessments the city exercises the sovereign power of taxation. The bonds are the city's bonds and not the bonds of the property owner. They differ from general obligations only in that the

city's liability to pay is limited by the statute, and hence by the contract, to amounts actually collected, plus certain other items hereafter noted.

The law requires that the funds collected be deposited in public depositories. Some of the funds thus collected and deposited were lost or are frozen in closed banks. But the method of safeguarding the funds was for the city, controlled it is true by the Legislature, and not for the bondholders, to determine, and the city must bear the loss. Certain funds were by error misapplied to the payment of bonds other than the correct ones, but the city must be held responsible here if it is responsible for misappropriation by its officers, and after payment is made the city must be charged with interest until payment, or judgment that will bear interest, for the contract is to pay with interest, and where the city withholds payment when it is due, it assumes the full obligation of the bond.

The court concluded that, under section 4 of chapter 99 of the Acts of 1931 (Acts 1931, p. 407, section 48-4404 Burns' Ann. St. 1933, section 12534 Baldwin's Ind. St. 1934), *supra*, it is the duty of the city to invest prepaid funds in bonds similar in kind and character at par only in the event bonds are available which are worth par. It cannot reasonably be presumed that the Legislature intended that par should be paid for bonds that were worth less. The court also concluded that where there were no bonds available for investment, issued under rolls where there were no delinquencies, the city should advertise in two daily newspapers, not less than ten days before the time of purchase, for bids, that is, offers to sell bonds at a price, and that the city should have the right to reject all bids, but might purchase bonds at the lowest and best price offered. But the statute provides for investment in bonds at par, which would preclude the right to pur-

chase at less than par or more than par, and the Legislature has jurisdiction to control the matter. The determination of the question of what bonds are worth par may present difficulties, but the solution of that problem must be left in the sound discretion of the officers of the city with whom the Legislature has placed it. If the investing officer, in the exercise of a sound discretion, determines that there are no bonds to be had at par which are a safe investment, he cannot buy, since the statute authorizes no variation in the formula of investment at par. Advertising for bids, and purchase of the cheapest bonds offered, might produce better results than the legislative formula, but jurisdiction to determine the manner and method of investment is in the Legislature, and the courts have no power to substitute another method.

It is contended that, where it appears probable that all of the bonds issued upon an assessment roll cannot be collected in full because of insolvency of the property owners who signed waivers, and depreciation of the property, equity requires that the funds collected shall be prorated among the unpaid bonds. The trial court correctly rejected this contention. The statute provides that the bonds shall be issued in ten groups, one group maturing each year, and for the application of the annual payment of assessments to the liquidation of the group next thereafter maturing. By section 48-2721 Burns' Ann. St. 1933, section 11669 Baldwin's Ind. St. 1934, it is provided that prepayments shall be applied to the redemption of bonds and coupons in the order of their serial numbers. All of the bonds are secured by the lien, but there is no provision in the bond or in the statute that they are equally secured, or that, in case of default in the payment of the first maturities, all maturities shall participate equally. It seems well settled that, where a mortgage lien secures two or more

notes maturing at different dates, the note first maturing will have priority unless the contract makes different provision. See *State Life Insurance Co.* v. *Cast et al.* (1938), 214 Ind. 17, 13 N. E. (2d) 705. The statute does not provide a method by which the impossibility of collecting from property owners who have signed waivers, and the insufficiency of the security afforded by the property, may be anticipated, and the funds withheld from the holders of matured bonds for the protection of those maturing in the future. The difficulty involved in determining whether the final installment of assessment will be paid, or the property will be of sufficient value to secure it several years hence, is so obvious that the only apparent method by which equality in participation could be assured would be to hold all of the funds until the assessments are all paid, or the alternative remedies of tax sale, foreclosure, and execution against the signer of the waiver have been exhausted. Such a course is clearly not contemplated, and the statute can only be reasonably construed as intending that payments of assessments be applied to the redemption of bonds in the order of their maturities.

It was concluded that, as to bonds issued under improvement resolutions between March 16, 1929, and June 30, 1931, no after-maturity interest should be paid, except upon bonds which had been presented and authenticated in conformity with the provisions of chapter 211 of the Acts of 1929 (Acts 1929, p. 705), *supra,* and that as to bonds issued between June 30, 1931, and November 29, 1932, the same rule should apply, except that, in the case of the latter bonds, payment should be made in the order of the maturity and listing of the bonds for collection.

Chapter 211 of the Acts of 1929 (Acts 1929, p. 705), *supra,* made provision for a special assessment delinquency and deficit fund, made up of interest and other

funds otherwise belonging to the city, out of which was to be paid deficiencies in the fund for bond redemptions arising out of failure to levy sufficient assessments or failure to collect interest after delinquency, or for any other reason. The statute provides that out of said fund any improvement bond or interest coupon *thereafter* issued, which shall have matured, and for which assessment shall not have been collected, shall be paid. Section 4 of the act provides that, after the taking effect of the act, improvement bonds shall bear interest from date until maturity in case funds are on hand at the maturity date with which to pay the same, and that otherwise they shall bear interest from date "until funds are available sufficient to pay the face value thereof, together with the accrued interest thereon." It is provided that: "No interest shall be paid on any such bonds or coupons after the maturity date thereof, except from the date on which they are first presented for payment and stamped 'not paid for want of funds.' It shall be the duty of the proper officer, as herein designated, to stamp on every such bond and coupon presented for payment the date of such presentation and a statement as to whether the same was paid or not paid on account of want of funds. Upon request of the holders of any matured bond or coupon, it shall be the duty of the officer charged with the payment thereof to make a record thereof, together with the name and address of the holder, and to notify such holder by mail immediately when funds are available to pay the same. Such notices shall be sent in the order in which requests for notices have been made."

By section 5 of chapter 99 of the Acts of 1931 (Acts 1931, p. 407), *supra,* it is provided that: "No interest shall be paid on any bonds or coupons issued prior to March 16, 1929, after the maturity thereof except from the date on which they are first presented for payment and stamped 'Not paid for want of funds.' "

It is contended that the provisions of the Acts of 1929 and 1931 above quoted fix not only the rights of the bondholders respecting the payment of interest upon their bonds after maturity, but that they control the order in which the principal and before-maturity interest on bonds shall be paid, and that when assessments have become delinquent and are afterwards paid the proceeds must be used in retiring bonds not in the order of their serial number, but in the order in which they were presented for payment after maturity and stamped "not paid. for want of funds," and recorded as having been presented. This contention seems to rest upon the last two sentences in the quotation from the act of 1929, which provide for a record of the presentment of the bond for payment being made upon the request of the bondholder, and the provision for notifying the bondholder by mail when funds are available, in the order in which requests for notices have been made. It is noted, however, that there is no express provision for priority of payment of the bonds in the order in which they have been presented and recorded; and an intention to change the order of payment expressly provided for will not be inferred from language which expressly grants only the right of precedence in notice that funds are available. It follows that the conclusion last referred to is erroneous.

The court seems to have concluded that bonds issued prior to the effective date of the act of 1929, *supra,* were not entitled to interest after maturity unless presented for payment and stamped "not paid for want of funds," as provided by the Acts of 1929 and 1931. The holders of this class of bonds are entitled to be dealt with according to the terms of the bonds and the statute in force at the time of the resolution under which they were issued. If delinquency interest was paid by the property owners, it must be paid to the bondholders whenever their bonds are presented. If the property

owners paid only the principal and interest to the date of payment, whether payment was made before maturity or thereafter, and the amount of the principal and interest received is paid to the bondholder upon the first presentation of the bond, he can claim no more. But if principal and interest have been paid to the city, and the bond is presented for payment and not paid, the city is liable not only for the interest received, but also for interest from the date of the presentment of the bond for payment until paid.

As against one of the conclusions it is contended that, under section 6 of chapter 211 of the Acts of 1929 (Acts 1929, p. 705), *supra,* only bonds thereafter issued are payable out of the "special assessment delinquency and deficit fund," and that bonds issued between the effective date of that act and the effective date of chapter 99 of the Acts of 1931 (Acts 1931, p. 407), *supra,* which provides for payment out of the funds of any bond *maturing* after March 16, 1929, are entitled to preference in payment out of the fund, since at the time they were issued there was no provision for participation in the funds by bonds issued prior to March 16, 1929. But this contention cannot be sustained. The act of 1929 (Acts 1929, p. 705), *supra,* provides that: "Out of said fund there shall be paid all deficiencies in improvement funds hereafter arising because of the failure of the city or town to levy sufficient valid assessments, or resulting from the failure to collect interest on assessments after delinquency, or for any other reason. There shall also be paid out of said fund any improvement bonds and interest coupons hereafter issued which shall have matured and for the payment of which assessments shall not have been collected. . . ." Section 6. Here are two distinct groups of bonds. If it was intended that only bonds and coupons *hereafter issued* were to participate, the first sentence is entirely meaningless and unneces-

sary. By the use of the word "also," it appears that the sentence in question was considered as indicating bonds of a certain character differing from those to be *hereafter issued*. Under a familiar rule of construction, it is required that effect be given to all of the provisions and words of a statute where it is possible. It cannot be concluded that the legislature inserted words and sentences in the statute that were meaningless. Only by ignoring the first sentence quoted from the statute, and the word "only," can the result contended for be sustained, and to ignore these provisions is not permissible.

Under the Acts of 1929 and 1931 the city is required to pay all necessary clerical and other expense incident to the administration of the Barrett Law funds. Section 1 of chapter 317 of the Acts of 1935 (Acts 1935, p. 1526) provides that in second-class cities such expense shall be paid out of the special assessment delinquency and deficit fund. Certain amounts were paid and disbursed out of the fund for clerk hire, and it was concluded by the court that these expenditures and those contemplated in the future are not in violation of the contract of the bondholders, and that the provision for such payment does not impair the obligation of the contract. In this view we cannot concur. The provision of the statute that all of the "special assessment delinquency and deficit fund" shall be used for the payment of bonds must be treated as written into and a part of the bonds issued when the statute was in force. Any subsequent legislation which diverts part of the fund to another purpose impairs the obligation of the contract. The fund diverted must be replaced.

Section 2 of chapter 317 of the Acts of 1935 (Acts 1935, p. 1526) reduces delinquency penalties on assessment rolls for which bonds had been theretofore issued from 10 per cent to 6 per cent. It was concluded that this reduction does not impair the

obligation of the contract of the bondholders or deprive them of property without due process; but, since the statute provided that delinquencies would be penalized at 10 per cent., and that the penalties would be set aside for the payment of the bonds, all bonds issued while such statutes were in effect are entitled to have penalties collected at the 10 per cent rate, and the statute is unconstitutional and ineffective to deprive them of that right.

The court concluded that the provision of section 2 of chapter 317 of the Acts of 1935 (Acts 1935, p. 1526), *supra*, which authorizes the payment of assessments with bonds issued for the same improvement for which the assessment was made, does not impair the obligation of the contract with the holders of bonds theretofore issued. The question was decided contrary to the court's conclusion in *Conter, Treasurer* v. *State ex rel. Berezner et al.* (1937), 211 Ind. 659, 8 N. E. (2d) 75. It is contended, however, that the right of a property owner to pay his assessment by surrendering bonds exists independent of the statute; that the city is trustee of an express trust; that the persons liable for assessments are debtors to the trust, and the holders of bonds and coupons are creditors; that where one is both a debtor and creditor there is a cross-demand; and that equity will permit a set-off of the debt against the demand. We cannot agree with this view. In the first place, as pointed out, there is no trust relationship, but even if there were the court's conclusion could not be sustained. If a group of ten mortgages on real estate is held in trust for the benefit of the holders of certificates or bonds, under which the holders of the bonds or certificates are the beneficial owners of the fund, the payment of which is secured by the pooled mortgages, and one-half of the property secured by the mortgages depreciates in value, and the makers of the notes secured by

mortgages on the depreciated property become insolvent and execution proof, while the remaining mortgaged property does not depreciate and is ample security for the notes secured by it, it is obvious that the bonds or certificates of interest will depreciate in value approximately one-half. We know of no rule of equity or method of set-off by which the obligors whose property is ample to secure their obligation to the trust may purchase one-half of the outstanding bonds or certificates at their market value and apply them at face value in full payment of their obligations, thus leaving the remainder of the certificates or bonds worthless and of no value whatever. In other words, the owner of an assessed piece of property may not select the bond or bonds which shall have the benefit of the payment of his assessment. All bonds are issued in anticipation of the aggregate amount of assessments, and each bond of each series has an equal right to participate in the installment of each assessment allocable to the payment of bonds of that series.

The court erred in concluding that the city could buy bonds in the open market in the manner described above, and pay the city's assessment liability by surrender of the bonds.

The court concluded that, upon foreclosure of the lien and the sale of property on which the assessments are in default, the property need bring only two-thirds of the assessed value. But this is clearly contrary to the provision of the statute, section 48-2721 Burns' Ann. St. 1933, section 11669 Baldwin's Ind. St. 1934, *supra,* which provides that there shall be a lien on the property to secure the bonds, and that "the property upon which the assessment is laid shall in no event be sold for less than the amount of the assessment, attorney's fees and costs."

In case assessments are not paid the bondholder has three remedies. The property may be sold as for delin-

quent taxes, he may bring an action to foreclose the lien against the property, or he may sue and recover judgment against the property owner who signed the waiver. The effect of the provision that the property shall not sell on foreclosure for less than the amount of the assessment, attorney's fees and costs is to relieve the property owner of personal liability in case of sale of the property on foreclosure.

The court concluded that, in actions to enforce assessments by foreclosure or against the property owner who signed the waiver, the bondholder proceeding in his own behalf and for other bondholders in like situation has no power to effect compromise of delinquent assessments and conflicting interests in the real estate subject to the lien for any bondholder except himself. It was also concluded that, in actions to enforce assessments, the court in which the action is pending has jurisdiction "to appoint a receiver, trustee, officer, board or body for all or any of the following purposes: To take charge of and manage and control delinquent property pending foreclosure; to investigate, negotiate with and arrange for compromises of defaulted assessments and conflicting interests in the real estate subject thereto, to receive conveyances of property as a result of compromises and on discharge of prior liens; to use funds arising from compromises in relation to liens on one property to discharge prior general tax liens on others covered by assessment, which would otherwise be lost to bondholders; and generally to manage and control the same for the benefit of the bondholders, parties to such proceeding, either in person or by class representation." A compromise of the rights of the bondholders involves some change in their rights under their contracts. The right to compromise involves the right to contract with relation to the subject-matter, and one who has no power to contract or to change a contract for another cannot

compromise for another. It is no doubt true that, in the absence of statutory authority, one bondholder might bring suit to foreclose a lien, or to recover against a property owner who had signed a waiver, for the benefit of himself and other bondholders in like situation. The statute provides that only one action shall be brought, and thus the first bondholder who brings suit has control of the action. Under the statute he may pursue this action for the purpose of enforcing the contractual rights and the contractual and statutory remedies in favor of himself and those other bondholders who are in like situation, but the statute gives him no right to forego remedies or accept less than the amount due for the other bondholders, except with their express consent and upon their express authorization. If the suing bondholder has no power to make a new contract for the other bondholders who are not parties to the suit, neither has the court in which the cause is pending, and it must follow that the court cannot vest a receiver or other officer of the court with power to compromise for bondholders who are not before the court, and to accept for them anything less than the full rights and remedies called for under their contracts.

There can be no doubt that in specific foreclosure cases, where the protection of the parties requires it, the court may appoint a receiver to take charge of and conserve the property involved pending a termination of the litigation and the sale of the property, the same as in cases of foreclosure of mortgages. But there can be no necessity for a receiver to receive the funds which are the proceeds of judgments against property owners or proceeds of the sale of property. Except in cases of receivers for specific property above referred to, there can be nothing to receive, and hence no necessity for, and therefore no authority to appoint, a receiver. What is desired by those parties who are contending for the

appointment of a receiver is the appointment of some person or officer of the court, with power to represent the bondholders who are not before the court, as a sort of guardian, or general agent, or attorney-in-fact, and to act in their behalf in respect to their rights and remedies as fully as they could act for themselves. No authority is cited which supports the view that this can be done. The statute prescribes the remedies available, and it may be that the provision, that upon fore-closure no property should be sold for less than the amount of the assessment, and interest, and costs, and attorneys fees, was intended to protect bondholders who were not before the court against compromises or col-lusive sales which would yield less than the full amount of the assessments intended for the payment of their bonds.

The court concluded that after the entry of the final decree it should retain jurisdiction in order to interpret and construe its decree, to remedy impediments to the enjoyment of the benefits thereof, to enforce the pro-visions thereof, and to exercise judicial control over the administration of the trusts involved in the proceed-ings. The parties were enjoined from commencing other actions against the treasurer of the city concerning the matters covered in this action, with the exception that the bondholders were not restrained from beginning proceedings for the enforcement of delinquent assess-ments.

Jurisdiction continues in the trial court, of course, to enforce its mandatory and injunctive decrees, but to interpret and construe its judgment after the term when it becomes final seems to involve the right to alter or change it. Since there are no trusts involved, there is no reason to continue juris-diction in order to exercise judicial control over trusts. The management of the funds involved, collected as

taxes are collected, is by the Legislature vested in the city acting through certain specific officers. The duties of these officers and of the city are prescribed by statute. Courts may not take over the administration and management of these matters. They may, upon the suit of an interested party, compel the performance of the duties in the manner prescribed, and they may enforce their orders in respect thereto, but when an action has been terminated, it cannot be assumed that grounds for another action will arise in the future, which may be determined in the original case upon a theory that there is a continuing supervision. When a decree has been entered, righting the wrongs specifically complained of, the case is at an end, except that jurisdiction is retained for the purpose of enforcing the court's orders by way of mandate or injunction.

The court properly concluded that the city should be mandated to levy a tax for the purpose of reimbursing the various funds as indicated by its conclusions. The only criticism of this conclusion is that to require the city to levy a current tax to pay its obligations would unduly increase the tax rate. But this can be no excuse. If taxes had been levied as the obligations accrued and as the law contemplates, the current burden would not be so large. The fact that funds have been unduly withheld from the bondholders to their injury until the amount is large, furnishes no excuse for further postponing their recovery. It was ordered that the tax contemplated should be provided for in the budget adopted and the tax levy made for the year 1939. The appeal has prevented this, and the conclusion and decree should be amended to provide for budgeting and levy at the next recurrence of these events.

The court erred in some conclusions of law herein

specified and in others which are not expressly referred to. The views expressed will indicate the errors.

Judgment reversed, with instructions to restate the conclusions of law in conformity with this opinion, and to enter a judgment and decree accordingly.

### ON PETITION FOR REHEARING.

FANSLER, J.—The reasons for the conclusion that the provision of section 2, chapter 317, of the Acts of 1935 (Acts 1935, p. 1526), which authorized the payment of assessments with bonds issued for the same improvement, impairs the obligation of the contract of the bondholders, does not apply where one person is the sole owner of all unpaid bonds and coupons, and also the owner of real estate subject to an assessment for the payment of said bonds, and therefore the provision of the statute, that "such bond or bonds, or coupons shall be accepted at par in full settlement of the assessment for the year in which said assessment was due, and no penalty or interest after the due date of the assessment shall be charged on such assessment paid with such bonds, or coupons," requires that the treasurer accept such bonds in such cases in satisfaction of delinquent assessments without the payment of the statutory delinquency penalty.

It is suggested that there is language in the opinion which may be construed as holding that installments of assessments should be applied to the payment of the first-maturing bonds regardless of when the installments were due. It was not the intention to so decide. The assessments falling due each year should be allocated to the payment of the series of bonds next thereafter maturing, notwithstanding there may be unpaid bonds of an earlier series.

The first question discussed was presented, but not decided, in the original opinion. The court will modify its conclusions accordingly.