## Hastings *v*. Gault et al.

[No. 27,289.  Filed January 8, 1940.]

*Robert Zimmerman,* and *Seebirt, Oaire & Deahl,* for appellant.

*Arnold, Chipman & Degnan,* and *George Beamer,* for appellees.

FANSLER, J.—This is an action by bondholders against the appellant to collect Barrett Law assessments. The appellant signed waivers in order to procure the privilege of paying the assessments upon his property in installments, and bonds were issued. This action is based upon his personal liability and also seeks foreclosure of the liens.

The improvement resolutions were adopted in 1927 and 1928. At that time the Barrett Law statute (Acts 1909, ch. 172, p. 412, § 7, Burns' Ind. St. 1933, section 48-2722, section 11670, Baldwin's Ind. St. 1934) provided: "Failure to pay any installment of principal or interest where [when] the same is due shall bring all installments of principal yet unpaid forthwith due and payable: Provided, Such unpaid installment of principal or interest be not paid within the periods of grace herein provided for. If such city shall fail to collect any unpaid assessment or installment thereof when due, no liability shall thereby accrue against such city, but the owner of the bonds hereinbefore provided for, or in case no bonds have been issued, then, the person to whom is due and owing the amount of such unpaid assessment for the performance of such work shall have the right to proceed in any court of competent jurisdiction to enforce the liens or the unpaid assessment, recovering interest, costs and a reasonable attorney's fee, and to have the proceeds of sale applied to his claim: Provided, When any person makes default in the payment of any installment of principal or interest, it shall be the duty of the treasurer to mail notice of such delinquency to such person, who shall have thirty

days from the date when the same was payable to pay such installment, with a fee to such treasurer of twenty-five cents for sending such notice: And provided, further, That no suit shall be instituted to collect any unpaid assessment, whether a waiver has been signed or otherwise, until thirty days after default, during which period of grace such assessment, or the unpaid installment thereof, may be paid to the treasurer without further penalty, nor shall any such suit be instituted until fifteen days after service of notice upon the delinquent by the owner of such lien or assessment, during which period such assessment or the unpaid installment thereof may be paid to the treasurer without further penalty."

Appellant filed a verified answer in abatement alleging that he had not received fifteen days' notice before the suit was filed. A demurrer to this answer in abatement, upon the ground that the statute above referred to does not apply, was sustained. The appellant then answered in two paragraphs, the first a general denial, and the second setting up again the statute referred to. A demurrer to the second paragraph of answer was sustained. The cause was submitted, and there was personal judgment against the appellant and judgment foreclosing the liens.

The action of the court in sustaining the demurrers to the plea in abatement and to the second paragraph of answer are the only errors assigned by the appellant.

The appellees assert that the provision for a fifteen-day notice of suit in the act of 1909, *supra,* only applies to property owners who had not signed waivers, and that in any event the act was repealed and superseded by chapter 99 of the Acts of 1931 (Acts 1931, § 1, p. 407, Burns' Ind. St. 1933, section 48-4401, section 12531, Baldwin's Ind. St. 1934).

The appellees' contention that the provision for the fifteen-day notice before suit was not intended to apply to cases in which waivers had been signed by the property owners is so inconsistent with the plain and unambiguous language of the statute that it cannot be taken seriously.

Section 6 of the act of 1931, *supra* (Section 48-4406 Burns' Ind. St. 1933), provides new remedies for the enforcement and collection of assessments. It provides for the sale of the property impressed with the lien at a tax sale, and that: "If such city shall fail to collect any unpaid assessment, or installment thereof, when due, the owner of the bonds issued on account of said assessment, or in case no bonds have been issued then the person to whom is due and owing the amount of such unpaid assessment for the performance of such work, shall have the right to proceed in any court of competent jurisdiction to enforce the lien of such assessment in the same manner as mortgages are foreclosed, recovering interest, penalty, costs, and a reasonable attorney's fees, and to have the proceeds of sale applied to his claim. In any such action to foreclose the bondholder shall have the option to declare the entire balance of said assessment due and payable, and may recover such entire balance on behalf of himself, and all other bondholders on said improvement." There is no provision for notice. It is expressly provided that: "The provisions of this section shall apply to all assessments . . . . made and confirmed prior to the going into effect of this act." The whole tenor of the act of 1931 clearly indicates an intention to revise and substitute new remedies, and it is clear that the new remedies provided were intended to apply to bonds issued under the act of 1909.

Appellant contends that if the effect of the act of 1931 is to annul the provision for the fifteen-day notice before suit, required by the act of 1909, it deprives him of a substantial contractual right, and that the attempted repeal is void because unconstitutional. He says that the fifteen-day notice provision is something more than a mere procedural right, since it grants an additional fifteen days within which to meet his obligation by paying the over-due assessment, or installment, and that during such fifteen-day period he may pay without the payment of attorney fees.

In *Webb, Auditor of Fountain County, and Another* v. *Moore* (1865), 25 Ind. 4, 8, 9, this court had under consideration a statute which changed the notice to be given upon the sale of property upon default in a school fund mortgage. The statute in effect at the time the mortgage was given provided for sixty days' notice of sale upon default. The statute was amended to provide for three weeks' notice, and three weeks' notice was given. Elliott, J., speaking for the court, said: "In the apt language of Perkins, J., in *Hopkins* v. *Jones, supra,* we ask, 'What were the obligations of the contract disclosed in this suit? There was an obligation on the side of the creditor to wait till the money named in the securities appearing in the case became due, before attempting to enforce its payment, and an obligation on the part of the debtor to pay that money when due, and to permit the land in question to be sold forthwith, if he failed to make the payment.' The law, not the contract, provided the manner of sale. The contract imposed the obligation on the parties, the law provided the remedy in case of breach. And we think it well settled that the remedy given by law to enforce a contract, upon a breach of its obligation, may be changed,

from time to time, at the will of the legislature. The point guarded by the constitution is, that, in so changing the remedy, care must be taken that the obligation of the contract be not, thereby, materially lessened, weakened, or impaired. It is equally well settled, that the legislature may give a more efficient remedy for the enforcement of the obligation of a contract, after breach, and that such legislation is not repugnant to the Constitution of the United States, prohibiting a state from passing any law impairing the obligation of contracts."

The act of 1909 did not prescribe any particular kind of notice, and it seems clear that the mere requirement of notice before suit, in which a notice by summons is given, is merely procedural, and if nothing else were involved it could not possibly affect the appellant's substantial rights. The provision for notice did not excuse the payment of the assessment; it merely extended the time within which it might be paid, with interest, for fifteen days, and permitted payment without attorney fees during that fifteen-day period. If these are substantial rights, of which the appellant could not be deprived, they were not necessarily stricken down by the amendment of the statute. They would affect, not the right of the plaintiffs to recover, but only the amount which might be recovered. The appellant might have paid into court at any time the amount of the assessments and interest to date of payment. The summons served by the sheriff was unquestionably notice that the plaintiffs were demanding payment, and the appellant might in an appropriate manner have raised the question as to whether the plaintiffs were entitled to collect attorney fees or court costs by tendering payment or making payment into court within fifteen days after the summons was served upon him. But

he has not offered to pay, and it seems clear from the record before us that he is not in a position to pay, and that the property upon which the liens are foreclosed is worth only a small part of the assessments.

Cross-errors are assigned by some of the appellees.

Under the Barrett Law, property against which liens are foreclosed may not be sold for less than the full amount of the lien. *Read* v. *Beczkiewicz, Treasurer* (1939), 215 Ind. 365, 18 N. E. (2d) 789, 19 N. E. (2d) 465. The bonds in question here were issued in series, and each bond constitutes a lien upon all of the property in the improvement district. The action was brought by the appellee Gault for the benefit of himself and other bondholders. During the course of the proceedings the appellee Gault filed a petition with the court alleging that the defendant, who had signed a waiver upon the property involved, was financially irresponsible and had no property that could be reached on execution; that the land covered by the liens had a market value of not to exceed $170; that it is encumbered for taxes in excess of $100; that the judgments will exceed the cash market value of the lot more than ten times; that it is unlikely that any bidder will bid the amount of the judgment; and that the bondholders will realize nothing unless some one be authorized to bid upon the property on behalf of all the bondholders; that if the property were bid in for the benefit of the bondholders it could thereafter be sold and something realized. At his suggestion, notice of his petition was served upon all persons interested as holders of bonds or coupons. The cross-appellants appeared and objected to the petition upon the ground that the court did not possess power or jurisdiction to make such an order as that prayed for; that the statutory remedies

are exclusive; that they would be injured if the property is permitted to be eventually disposed of for less than the amount of the decree, plus costs and attorney fees; that such an order and sale would destroy without compensation their vested interests and rights; that they have a right to have such property held until a sale can be effected for the full amount of the decree. After pleadings, which we need not notice, the facts were stipulated. It was agreed that the allegations of the petition were true, and "that taxes and interest are accumulating against said property at the rate of fifteen dollars per annum and the present equity for the bondholders will be completely exhausted in the course of three or four years." An order was entered by which it appears that all of the bondholders have been notified; that the court had heard evidence and was advised in the premises, and found that the allegations of the petition were true; that it is to the best interest of the parties to permit John S. Gault, in the event there is no bid at such sale in an amount equalling the amount due, to bid upon such property the amount of the judgment, and to receipt the judgment for the amount thereof, and to pay the costs, and receive from the sheriff a certificate of sale, and if there is no redemption to receive a deed for the property as trustee for himself and all other persons interested. It was ordered that the court retain jurisdiction and authority to empower the trustee to make disposition of the property for less than the amount of the bid if it shall be made to appear that such disposition shall be for the best interest of all of the bondholders. It was ordered that the control of the property held in trust should at all times be under the supervision of the court.

We find no error in this, but, on the contrary, a proper exercise of equity jurisdiction. Except for the

provision of the statute, that the property could not be sold for less than the amount of the judgment on foreclosure of the lien, it would be offered at public sale to the best bidder for cash and the proceeds would be divided, pro rata, among the holders of the bonds and coupons. When it was made to appear that there could be no sale of the property for cash, for the full amount of the judgment, it became necessary that some procedure be resorted to by which the property could be liquidated for what it might be worth in cash for the benefit of all the interested parties. It would seem that the method arrived at is an efficient and satisfactory one.

We said in *Read* v. *Beczkiewicz, Treasurer, supra,* that a receiver could not be appointed to compromise the rights of bondholders who were not before the court, and that perhaps the provision of the statute, that, upon foreclosure, no property should be sold for less than the amount of the assessment, and interest, and costs, and attorney fees, was intended to protect bondholders who were not before the court against compromises or collusive sales which would not yield the full amount of the assessments. But here there is no compromise. The sale is the regular sale upon execution under the decree. The statute requires that the property shall not be sold for less than the full amount. If there is no cash bid in that amount, the only recourse of the plaintiff bondholder and those in like situation is to take the property, which is done under the procedure adopted. It could be thereafter sold in an action in partition, and the supervision of the court would protect against collusion, but we see no reason why the court having jurisdiction of the case cannot complete the remedy by supervising the ultimate sale.

Judgment affirmed.