## DARNELL v. ROWLAND.

FRAUD.—*Pleading.*—The general allegation of fraud is not of itself sufficient to raise such an issue. The facts—the acts and circumstances—which constitute the fraud must be alleged.

SAME.— *Weakness of Mind.*—If a party be *compos mentis,* mere weakness or feebleness of mind does not render him incapable of making a contract, but may become a controlling circumstance, when connected with other facts tending to establish fraud, in giving character to the transaction, and rendering it fraudulent; but to make a pleading good for that purpose, the *indicia* of fraud must be alleged.

EVIDENCE.— *Unsoundness of Mind.*—A witness testified that he had been acquainted with the plaintiff for several years, and said, "I think her mind was rather weak at the time of making the contract, but was improving. I did not think her mind was sufficient for me to contract with her."

*Held,* that this did not prove that the plaintiff was of unsound mind.

APPEAL from the Owen Common Pleas.

ELLIOTT, J.—Suit by Sarah Rowland against Isaac M. Darnell. The complaint is in three paragraphs. The first paragraph is on a promissory note for fifty-five dollars and twenty-five cents, payable when Darnell should collect that

amount of interest due on a note transferred by the plaintiff to him, and avers that he had collected said interest.

The second paragraph is upon the following agreement in writing, viz:—

"Memorandum of an agreement made and entered into between Isaac M. Darnell and Sarah Rowland, both of the county of Owen and State of Indiana, witnesseth: that the said Sarah Rowland agrees to, and has this day assigned over to Isaac M. Darnell cash notes on John Briggs, of the county of Sullivan and State aforesaid, to the amount of one thousand three hundred dollars, without recourse, the same being secured by mortgage as purchase money of real estate. And the said Isaac M. Darnell, on his part, agrees for and in consideration of the use of said money, to pay said Sarah, as long as she lives, one dollar for each week, and boarding, if she continues to live with his family, and also, in case of sickness, to take care of her, and see that she has proper medical attendance; and if she chooses to live with any one else, he is to pay her two dollars and fifty cents each week, in such payments, when due, as she may elect herself. And, furthermore, it is mutually agreed by and between the said parties, that at the end of the natural lifetime of the said Sarah Rowland, said Isaac M. Darnell, his executors or administrators, is to pay over the above assigned notes to Hannah R. Darnell and Jennie D. Darnell, equally dividing it between them. And, furthermore, in order to secure the performance of this contract on the part of the said I. M. Darnell, and to secure damages which may arise to the said Sarah Rowland on account of its forfeiture, said I. M. Darnell is to give a lawful mortgage on the south half of the south-east quarter of section 17, town 9, north of range 4 west, or any other property of equal or greater value.

"Witness our hands and seals, this December 19th, 1865.

"SARAH ROWLAND, [Seal.]

"ISAAC M. DARNELL, [Seal]."

It is averred, that after making said contract, the plaintiff lived in the family of the defendant fifty-nine weeks, and had made her home elsewhere for the period of twenty weeks. The payment of forty-seven dollars is admitted, and judgment demanded for the residue, according to the terms of the contract.

The third paragraph alleges, that previous to the month of November, 1867 [1865], the plaintiff was a resident of Sullivan county, Indiana, and possessed in her own right a competence sufficient for her support; that having about that time disposed of her farm, with the intention of investing the proceeds in a manner that would secure the comfort of her declining years, the defendant at that time sought her out, and induced her to pay a visit to his family; that being unmarried and childless, and of advanced years and feeble health, she availed herself of the defendant's invitation to visit her sister, the defendant's wife; that soon after her arrival in the defendant's family she was taken seriously ill, and for some weeks suffered the inroads of disease; that during said sickness the defendant, his wife, and family, attended her with the most assiduous attention, and by their kind and flattering treatment sought in every way to win her confidence and esteem; that after her confidence had thus been wrought upon, and her body and mind so enfeebled by disease as to render her incapable of properly transacting her business, the defendant fraudulently induced her to enter into the contract herein before set out in connection with the second paragraph of the complaint. It is further averred that soon after the execution of the contract, and the notes therein referred to were surrendered to the defendant, "the deportment of himself and family towards the plaintiff became so harsh and disagreeable as to render her stay among them exceedingly unpleasant to her, and she was subject to such constant annoyance and insult as to entirely rob her of all the comforts of home, which the representations of the defendant induced her to believe she was contracting for, and to

obtain which she made said contract;" that by reason of said unkind treatment she was compelled to remove from the defendant's family, and find a home elsewhere, which she did on the —— day of ——, 1867; that the defendant had failed to pay all that was due her under said contract, and had also failed to execute and deliver to her the mortgage as required by said contract. It prays that the contract be declared void, and for judgment for "said one thousand three hundred dollars, and interest thereon, and for other proper relief." A demurrer to this paragraph was overruled, to which an exception was taken.

Issues were formed on the first and second paragraphs of the complaint, but no question arises on them in this court.

To the third paragraph the defendant answered: First, the general denial.

Second, that on the 14th of January, 1867, and before the commencement of this suit, the defendant executed and tendered to the plaintiff a mortgage on the property described in the agreement. The mortgage was filed with and made a part of the answer. Its condition is in strict conformity with the agreement. The paragraph further avers a performance of all the other stipulations of the agreement on the defendant's part, and denies all fraud. The third paragraph alleges a performance of all the stipulations of the agreement on the part of the defendant. Reply in denial. The isues were tried by a jury, who returned the following verdict: "We the jury find that there is due and unpaid upon the note in the first paragraph $37.84; that the money due per week on contract in second paragraph of complaint was not demanded by plaintiff of defendant; that there is due plaintiff for money due her per week on the contract at date of suit $——; that the contract was not procured from the plaintiff through fraud; that the plaintiff at the date of contract was not capable of contracting. We the jury find for the plaintiff, and assess her damages at thirteen hundred and thirty-seven dollars and eighty-four cents, and that the contract named in complaint

be canceled and rescinded." A motion for a new trial was overruled, and judgment rendered on the verdict.

The first error complained of is the action of the court in overruling the demurrer to the third paragraph of the complaint. That paragraph, as we have seen, claims that the contract between the parties was procured by fraud, and that the plaintiff at the time of its execution was so enfeebled by disease, both in body and mind, as to render her incapable of properly transacting her business; and for these reasons it is claimed that the contract should be held void, or rescinded, and a judgment is claimed for the amount of the notes assigned by the plaintiff to the defendant. Upon this paragraph the recovery was had.

The general allegation of fraud is not, of itself, sufficient to raise such an issue. The facts, the acts and circumstances, which constitute the fraud must be alleged. This the paragraph under consideration does not do, and it is not therefore sufficient to raise the question of fraud. But as the jury found that the contract was not procured by fraud, we need not discuss that question further. Nor is it alleged that, at the time of making the contract, the plaintiff was of "unsound mind," and therefore incapable of contracting. The only allegation in the paragraph on the subject is, that "her body and mind were so enfeebled by disease as to render her incapable of properly transacting her business;" and that whilst in this condition the defendant fraudulently induced her to enter into the contract. We have already disposed of the allegation of fraud, and refer here only to the question of unsoundness of mind. Mere weakness or "imbecility of mind is not sufficient to set aside a contract when there is not an essential privation of the reasoning faculties, or an incapacity of understanding and acting with discretion in the ordinary affairs of life. This incapacity is now the test of that unsoundness of mind which will avoid a deed at law. The law cannot undertake to measure the validity of contracts by the greater or less strength of the understanding; and if the party be *compos*

Darnell *v.* Rowland.

*mentis,* the mere weakness of his mental powers does not incapacitate him." 2 Kent Com. 452; *Somers* v. *Pumphrey,* 24 Ind. 231.

Weakness or feebleness of mind may become a controlling circumstance, when connected with other facts tending to establish fraud, in giving character to the transaction, and rendering it fradulent; but to render a pleading good for that purpose, the *indicia* of fraud must be alleged. We do not think the paragraph shows any valid reason for setting aside or canceling the contract. The demurrer to it should have been sustained.

Nor does the evidence support an allegation of unsoundness of mind on the part of the plaintiff at the time of making the contract. It appears by her own evidence that she was not sick at the defendant's house, as alleged, before the contract was made: she says, "I was not sick, but had some cough;" nor does she pretend that she did not fully understand the contract, or its legal effect, or that she was in any manner overreached or unduly influenced in making it; she only complains of the defendant's family after it was made. Several witnesses testify to her soundness of mind at the date of the contract, whilst the only evidence even remotely tending to the contrary is that of one Minnick, a brother-in-law, who testified that he had been acquainted with the plaintiff for several years, and then said, "I think her mind was rather weak at the time of making the contract, but was improving. I did not think her mind was sufficient for me to contract with her." This does not prove that she was of unsound mind. The verdict was clearly contrary to the evidence, and should have been set aside and a new trial granted.

The judgment is reversed, with costs, and the cause remanded, with directions to the court below to sustain the demurrer to the third paragraph of the complaint, and for further proceedings, &c.

*A. T. Rose,* for appellant.

*J. T. Dye* and *A. C. Harris,* for appellee.