IN RE HAAS' WILL

HAAS *v.* KOPPIUS ET AL.

[No. 17,219.  Filed April 14, 1944.  Rehearing denied May 25, 1944.  Transfer denied June 14, 1944.]

*Ramsey & Grayson,* of Vincennes, for appellant.

*Arthur L. Hart* and *Norman F. Arterburn,* both of Vincennes, for appellees.

DOWELL, J.—This appeal arises out of litigation involving the interest of Weaver Haas in a trust fund created by the will of Amos Z. Haas who died July 2, 1913, leaving the sum of $25,000 in trust for the benefit

cf his widow during her lifetime with remainder in equal shares at her death to his two sons Ethan and Weaver. Decedent's widow died January 3, 1941. Prior to her death the following events took place.

In March, 1921, Weaver Haas and his wife, Mary Haas, were divorced and thereafter, on March 23, 1922, as an alimony settlement, the husband sold and assigned in writing, for a stated consideration, all of his right, title and interest in and to said trust fund to his divorced wife, the said Mary Haas.

In 1923, Weaver Haas was adjudged a bankrupt and on July 17, 1925, the bankrupt's assets, including his interest in the trust fund aforesaid, were offered for sale by the trustee in bankruptcy and were purchased by one Joseph Townsend. The appellees herein Koppius and Townsend asserted their claim to said trust fund in the court below by reason of descent from the said Joseph Townsend, who died prior to the bringing of this action.

On February 28, 1927, the said Mary Haas, by an instrument in writing, and for a stated sum of $10 and other consideration unstated purported to reassign to Weaver Haas the interest in said trust fund previously assigned to her by him in the writing dated March 23, 1922.

On October 27, 1936, Weaver Haas died testate leaving as his sole beneficiary and legatee his second wife, the appellant herein, Anna R. Haas, whose claim to said trust fund is based upon the reassignment thereof to decedent by his divorced first wife and its subsequent descent to appellant.

All of these events, as previously stated, occurred prior to the death of the widow of Amos Z. Haas.

The probate court of Benton County, Arkansas, on October 8, 1942, adjudged the aforesaid Mary Haas to

be a person of unsound mind and letters of guardianship were issued to the appellee herein Mary O'Kelley. The claim of O'Kelley to said trust fund in the court below was as such guardian and was asserted upon pleadings alleging (1) that the ward, at the time of the purported reassignment of said trust fund to Weaver Haas, was of unsound mind (2) lack of consideration for said reassignment (3) undue influence, persuasion and threats in the procurement thereof and (4) non est factum.

Appellees, Koppius and Townsend, raised certain issues by their pleadings with respect to the validity and effectiveness of the assignment by Weaver to Mary Haas. These appellees make no assignments and present no briefs. We take it, therefore, that they have waived their right to question the finding and judgment of the trial court, which was against them ⌐ ʌ these issues; so for the purpose of this review we must take for granted that the assignment from Weaver to Mary Haas was valid and effective to and did convey to her the interest of Weaver Haas in the trust fund.

The appellant makes but one assignment, i.e., error in the overruling of the motion for new trial which challenges the sufficiency of the evidence and the legality of the decision.

Thus we have before us for consideration only matters bearing upon the purported reassignment of said trust fund by Mary Haas to Weaver Haas on February 28, 1927.

The original writing was not produced at the trial below but was evidenced by a recordation thereof in the recorder's office of Knox County, Indiana, bearing date December 18, 1935, nearly nine years after the date of execution and delivery of the original instrument.

The supporting evidence consisted of the testimony of one witness, an attorney, who testified that the instrument was drawn in his office at the request of Mary Haas who signed same in his presence and immediately thereafter left the office with the writing in her possession; that sometime in September, 1935, he received the instrument by mail from Weaver Haas with a request for recordation thereof which was accomplished; that thereafter it was lost and efforts to discover it were unavailing. The witness so testifying appeared below and appears here as attorney for the appellant, Anna R. Haas. Appellee O'Kelley objected to the admission of this testimony but raises no question here by assignment of cross errors.

Appellant first contends that the contract of a weak-minded person is valid in the absence of a showing that such contract is tainted by fraud; and that fraud was not and cannot be an issue in the instant case since it is not alleged in the pleadings filed by appellee O'Kelley. From the briefs it appears that no motions or demurrers were addressed to O'Kelley's answer or to her cross-complaint. These pleadings contain averments (1) unsoundness of mind of Mary Haas at the time of the alleged reassignment (2) undue influence, persuasion, threats in procuring the alleged reassignment coupled with weakness of mind of Mary Haas.

It has been held that the term "fraud" need not be used in the pleadings if facts are averred which show fraud. *Budd* v. *Bd. of Co. Comrs. of St. Joseph Co.* (1939), 216 Ind. 35, 22 N. E. (2d) 973; *Holliday* v. *Perry* (1906), 38 Ind. App. 588, 78 N. E. 877.

"Undue influence" is recognized by the weight of authority as a species of fraud. *Borchert* v. *Borchert*

(1907), 132 Wis. 593, 113 N. W. 35; *In re* ▮ *Chinsky's Will* (1934), 268 N. Y. S. 719; *Eldridge* v. *May* (1930), 129 Me. 112, 150 A. 378; *McDonald* v. *MacNeil* (1938), 300 Mass. 350, 15 N. E. (2d) 460; *Gallagher* v. *Neilon* (1909), Texas, 121 S. W. 564; *Heath* v. *Capital Savings etc.* (1906), 79 Vt. 301, 64 A. 1127; *Price's Ex'r.* v. *Barham* (1937), 147 Va. 478, 137 S. E. 511; *Roche* v. *Roche* (1919), 286 Ill. 336, 121 N. E. 621; *Kendall* v. *Watts* (1929), 135 Okla. 66, 273 P. 991.

Under the circumstances of the instant case we are of the opinion that the allegation of undue influence exercised upon a person *non compos mentis* sufficiently charges a constructive fraud. *Ashmead et. al.* v. *Reynolds et al.* (1893), 134 Ind. 139, 142, 144, 33 N. E. 763.

There is ample evidence in the record to support a finding that Mary Haas was, on February 28, 1927, a person of unsound mind. No less than eight witnesses concur in that opinion which is based, first, upon the insanity of her mother with whom she lived while in Vincennes and who, when it rained, was accustomed to shelter herself with an umbrella while sprinkling the flowers with a sprinkling can and who sat upon her porch cursing the children as they passed by on their way to and from school; the testimony of appellant's own medical expert who testified that heredity is an important cause of insanity; and upon observation of the actions and habits of Mary Haas herself who walked about the streets of Vincennes mumbling to herself, flinging her arms and hands violently from side to side, or twisting and untwisting her handkerchief, while she staggered in a peculiar manner. Her facial muscles twitched and occasionally she broke out in laughter for no apparent reason. Her manner of walking was other-

wise peculiar in that she walked intermittently slowly and very rapidly, stopping at frequent intervals to peer suspiciously behind her as if someone were following. When questioned by neighbors as to this habit she stated that she thought someone was coming behind her, that sometimes there was and sometimes there wasn't. To her neighbors she stated that she was married but didn't know where her husband was, this being some years after the divorce. Her conversation was incoherent. While employed at the home of one of the witnesses she frequently put coffee into vessels containing milk and milk into sugar containers and on one occasion her employer, at the beginning of a meal discovered that the biscuits prepared by Mary were full of tacks. During this employment she was accustomed to hide food in dresser drawers, laundry bags and mattresses and one occasion during the absence of her employer set the house afire through an attempt, based on no apparent reason, to remove the fuel oil from an oil range while it was burning. This employment as well as other jobs had to be terminated by reason of her utter inability to coordinate her mental processes. These are a few of the facts appearing in the testimony as bases for the opinions of unsoundness of mind of Mary Haas on February 28, 1927.

Indeed, the evidence, as it appears to us, would justify a conclusion not only that Mary Haas was of unsound mind on that date but that she had been so continuously from the latter period of her life as Weaver Haas' wife and that his conduct played no small part in the aggravation of her condition, to say the least. Without dwelling upon the details of his love affair with another woman and his importunities for a divorce in order that he might marry her and without comment thereon it is enough to say that such circumstances, im-

pressed upon one already predisposed by heredity toward insanity, could result in nothing less than such an aggravation.

There is also in the record evidence showing that Weaver and Mary Haas, though divorced, maintained their contacts with each other and further evidence from which the trial court reasonably might have inferred that she was subject to his influence and domination. On one occasion she stated to a neighbor that she would do anything for Weaver Haas and the evidence appears to bear it out. On January 2, 1923, she gave to him her absolute power of attorney granting to him complete control of her property, real and personal. She traveled to Akron, Ohio, to testify at a hearing on objections of creditors to his discharge in bankruptcy. There, as a result of her testimony a charge of perjury was lodged against her following which she permitted herself to be led into court by his attorney where she waived her constitutional immunity and admitted that her testimony had been false in an attempt to conceal certain of his assets from creditors. She stated that she had done it to help him. She received from him as a part of her divorce settlement the deed to a hotel which she leased to him at a rental of $100 per month while his own income therefrom was $750 per month through a sublease to third parties. At his request she gave to him the original writing by which he conveyed to her his interest in the trust fund here involved which instrument he never returned to her. As late as 1929 he visited her in Vincennes, took her to dinner, and obtained her signature to certain papers. There is further evidence to the effect that one of Mary Haas' employers corresponded with Weaver Haas requesting financial assistance for her.

From all these and other facts and circumstances

proved at the trial below the court had a right to infer that Weaver Haas was aware of Mary's mental infirmity at all times during the course of his transactions with her. Such an inference flows naturally and reasonably from the evidence.

Appellant cites the case of *Judd* v. *Gray, Gdn.* (1901), 156 Ind. 278, 59 N. E. 849, in support of his contention that there is no presumption of knowledge of the unsoundness of mind of a person not under legal guardianship. We will concede that appellant correctly states the rule of law as enunciated in that case but quite obviously she overlooks or disregards the further rule, also stated therein, to this effect:

"The question of knowledge . . . was an issuable fact for the determination of the jury . . ."

That the trier of the facts in such a case has the right to consider all the evidence and to draw all reasonable inferences therefrom is elementary.

Appellant urges that, Mary Haas not having been adjudged *non compos mentis* at the time of the purported reassignment, mere feebleness of mind cannot, of itself, be sufficient to set aside a contract. This is a well established rule of law and we have no quarrel with it. However, it is equally well established that such weakness of mind may become a controlling circumstance when connected with other facts tending to establish fraud. *Darnell* v. *Rowland* (1868), 30 Ind. 342; *Ashmead et al. v. Reynolds et al. supra.*

In the Ashmead case it was stated:

". . . whenever there is great weakness of mind in a person executing a conveyance of land, arising from age, sickness, *or any other cause,* though not amounting to absolute disqualification, and the consideration given for the property is grossly inadequate, a court of equity will . . . interfere and set

the conveyance aside." (Italics ours.) See *Allore* v. *Jewell* (1876), 94 U. S. 506, 511, 512.

No evidence was adduced at the trial below as to the actual consideration received by Mary Haas for the purported reassignment. The terms of the instrument itself, standing alone, bespeak gross inadequacy thereof.

We take it to be the law that once it is established that a grantor was a person of unsound mind at the time the conveyance was made, the burden is upon the other party to the transaction to show that he accepted the conveyance in ignorance of such mental unsoundness; or that the transaction was fair, open and voluntary and was based on adequate consideration and that there was no fraud or undue influence. *Hull* v. *Louth, Gdn. et al.* (1886), 109 Ind. 315, 10 N. E. 270; *Aikens* v. *Roberts* (1917), 164 N. Y. S. 502; *Wells* v. *Wells* (1926), 197 Ind. 236, 150 N. E. 361, 46 A. L. R. 413, 432.

Appellant has failed to sustain that burden.

Affirmed.

NOTE.—Reported in 54 N. E. (2d) 119.