GORNEY ET AL. *v.* GORNEY, GUARDIAN ETC.

[No. 19,349. Filed April 12, 1962. Rehearing denied May 14, 1962. Transfer denied April 28, 1964, with separate opinion reported in 198 N. E. 2d1.]

*George Sands,* of South Bend, *Leon E. Woodford* and *F. L. Wiltrout,* both of Elkhart, for appellants.

*Olczak & Olczak, Anthony Olczak,* of counsel, of South Bend, *Cawley & Byron* and *Philip E. Byron, Jr.,* of counsel, of Elkhart, for appellee.

RYAN, C. J.—This was an action brought by appellee as guardian to recover certain real estate which appellee's ward has deeded to appellants, reserving in himself a life estate.

Trial by the court resulted in a finding and judgment for the appellee and against the appellants on an amended additional and second paragraph of amended complaint and for the appellants and against the appellee on the amended complaint.

The judgment ordered the appellants to reconvey to appellee's ward all their right, title and interest in the particular piece of real estate involved by a good and sufficient deed within thirty (30) days from the date of the judgment. The judgment also provided for the appointment of Robert C. Young as Commissioner to make such conveyance to appellee's ward and to deliver to him a proper deed for the real estate if appellants failed to do so.

The appellants' motion for a new trial, containing six (6) specifications, was overruled by the trial court. The appellants assign as error that the court erred in overruling appellants' demurrer to appellee's amended complaint; that the court erred in overruling appellants' motion to make appellee's amended additional and second paragraph of amended complaint more specific; that the court erred in overruling appellants' demurrer to appellee's amended additional and

second paragraph of amended complaint; that the court erred in overruling appellants' motion for a new trial.

The evidence in the case most favorable to appellee reveals that appellant Joseph A. Gorney was a nephew of appellee's ward, Frank Gorney, and a son to appellee-guardian, Jacob Gorney. The appellants lived with Frank Gorney immediately after they were married in 1941 and continued to live with him until 1945. The appellants from October 26, 1945 to March 16, 1950 lived in a house that was on a twenty (20) acre parcel of land which appellants had purchased. This house was located approximately one (1) block from Frank Gorney's house. The appellants moved back in with Frank Gorney on May 17, 1950 and continued to live there until after the execution of the deed which is the subject matter involved in this controversy.

Frank Gorney's mother, who was appellee Joseph Gorney's grandmother, was also living in the house when appellants moved in in 1950. Appellee's ward was married in 1929 and divorced in 1936, and never remarried. He had no children. The evidence showed that Frank Gorney's mother had divided up her land and deeded sixty (60) acres to Jacob Gorney and sixty (60) acres to Frank Gorney, and that appellee's ward had sold ten (10) of his sixty (60) acres which he received from his mother.

There was conflict in the evidence concerning an alleged conversation between appellee's ward, Frank Gorney, and his mother about the real estate involved in this case. Appellant Bernice Gorney testified that she, Frank Gorney and Frank Gorney's mother had a conversation on May 15, 1950, and that Frank Gorney's mother made the following statement:

"Frank; I want you to remember to deed that property to Joe and Bernice, because I want to keep this farm in the Gorney name, and Jacob sold his, but I want to make sure this side stays in the Gorney name, and the only way to make sure is to give it to Joe and Bernice". She further testified that Frank Gorney in response to his mother's statement, as set out above, stated: "Yes, mother. I hear what you say and that is just what I am going to do".

Frank Gorney testified that he, his mother, and appellant Bernice Gorney did not have any conversation about the land at any time.

Bernice Gorney also testified that there was another conversation between herself, Frank Gorney and Frank Gorney's mother which occurred on the day the mother died. In this conversation, it is alleged that Frank Gorney's mother gave him orders to deed the property to appellants as soon as he possibly could. This purported conversation was also denied by Frank Gorney when he testified.

The evidence further shows that appellee's ward, Frank Gorney, deeded the fifty (50) acres to appellants on June 23, 1950, reserving a life estate. There is a conflict in the evidence concerning this conveyance to appellants. Appellant Bernice Gorney testified that Frank Gorney approached her and her husband and stated that he wanted to give them the fifty (50) acres. She further testified that Frank Gorney requested her to contact an attorney and make an appointment so that the deed could be made. Appellant Bernice Gorney also stated that she or her husband never requested Frank Gorney to deed the fifty (50) acres to them.

Appellee's ward, Frank Gorney, however, testified that he did not request Bernice Gorney to make an ap-

pointment for him with an attorney to deed the property to appellants. He also testified that appellants stated that they would deed the property back to him. He further testified that he asked the appellants to deed the property back to him at least three or four times.

Appellants argue that it was error for the trial court to overrule appellants' demurrer to appellee's amended and additional second paragraph of amended complaint. Appellants allege that appellee's amended additional and second paragraph of amended complaint seeks to have a constructive trust declared in favor of appellee's ward and that fraud, actual or constructive, constitutes an essential element of a constructive trust. Appellants further contend that the appellee's pleading attacked by their demurrer does not allege fraud. The appellants in this case did file a motion to make the amended additional and second paragraph of amended complaint more specific, which motion was overruled and thus the sufficiency of the pleading must be determined from the facts stated without support from any conclusion which is not drawn from the facts fully pleaded. *Pearlmen* v. *Mass. Bonding & Ins. Co.* (1956), 126 Ind. App. 294, 130 N. E. 2d 54.

It is a settled rule in this state that the term "fraud" need not be used in the pleading if facts are alleged which show fraud. *In re Haas' Will* (1944), 115 Ind. App. 1, 54 N. E. 2d 119; *Holliday* v. *Perry* (1906), 38 Ind. App. 588, 78 N. E. 877. Therefore it is essential to review the appellee's amended additional and second paragraph of amended complaint to see if it alleges facts which show fraud. The appellee in Paragraph 4 of the amended additional

and second paragraph of amended complaint alleged that appellants in order to enhance their credit and enable them to borrow money, induced the appellee's ward to convey to them a remainder interest in the real estate involved in this controversy. Appellee further alleged that appellants agreed to reconvey the remainder interest to appellee's ward after appellants had executed a mortgage on the real estate. It was further alleged in the complaint that at and before the time of conveyance the relations of appellee's ward and appellants were of a very intimate and confidential character and thereby appellee's ward was persuaded, influenced, advised and prevailed upon by appellants to believe that he could safely vest title in said remainder. It was further alleged that in reliance upon the integrity, loyalty and honesty of appellants, the appellee's ward conveyed said real estate to appellants. Paragraph No. 5 alleged that in reliance upon appellants' promise to reconvey, the appellee's ward did execute a warranty deed to appellants, reserving a life estate in himself. Paragraph No. 6 alleged the appellants and appellee's ward executed a real estate mortgage whereby the real estate conveyed to appellants by appellee's ward was mortgaged. Paragraph No. 7 alleged that subsequent to the execution of said real estate mortgage, the appellants refused to reconvey their title, as they promised, to appellee's ward. Paragraph No. 8 alleged that appellee's ward made a demand on appellants to perform their agreement and reconvey, which demands have been refused by appellants. Paragraph No. 9 alleged the appellants, with the intent to cheat and defraud the appellee's ward out of said real estate and to retain the same for their own use and benefit, refused to reconvey their title in the real estate as they agreed

to do. The prayer of appellee's amended additional and second paragraph of amended complaint asked for a constructive trust to be declared in favor of the appellee's ward and enforcement of such trust by directing and ordering the appellants to reconvey the real estate in question to appellee's ward by executing and delivering to appellee's ward a good and sufficient deed. The prayer also asked for a commissioner to be appointed to make said conveyance if appellants failed to execute a deed.

This court in the case of *Huffman* v. *Huffman* (1905), 35 Ind. App. 643, 73 N. E. 1096, at 35 Ind. App. page 645, stated:

> "For the purpose of working out justice, constructive trusts are raised by equity, when in fact there was no intention by the party charged as trustee to create such relation, and usually, indeed, when his intention was otherwise. The gist of every constructive trust is fraud, which may be founded upon misrepresentation and concealment, or arise from the use by one party of some influential or confidential relation which he sustained toward the owner of a legal title, thereby obtaining such title himself upon more advantageous terms than he could otherwise have done. And therefore one who obtains the legal title to property by arts or acts, or through circumvention or imposition, or by virtue of a confidential relation and influence arising from it, under such circumstances that he ought not, in good conscience, to hold and enjoy the beneficial interest therein, is converted into a trustee, and ordered so to execute the trust as to protect or indemnify the party defrauded, and at the same time promote fair dealing and common honesty in the interest of society and the state." (citing cases)

Applying the above rule of law to the facts pleaded in the instant case, as set out above, we conclude

that the appellee's pleading does state facts
■ sufficient to constitute a cause of action and
that the appellants' demurrer was properly
overruled.

The appellants combine their Specifications No. 4
and No. 5 in their motion for a new trial and support
them with one argument. Specification No. 4 is that
the decision of the court is not sustained by sufficient
evidence, and No. 5 is that the decision of the court
is contrary to law.

As to the specification that the decision of the court
is not sustained by sufficient evidence, it is well settled
that we will consider only the evidence which
■ tends to support the finding, together with the
reasonable, natural and logical inferences which
may be drawn therefrom. *Isenhour* v. *Speece, Admr.
et al.* (1958), 238 Ind. 293, 150 N. E. 2d 749; *Silverstein
et al.* v. *Central Furniture Co., Inc.* (1960), 131 Ind.
App. 170, 162 N. E. 2d 690. A careful review of the
record in the instant case reveals that there is evi-
dence in the record that the appellee's ward asked the
appellants to return the deed to him when they had
paid out the mortgage. There was also evidence in
the record that appellants told the appellee's ward that
they would deed the property back to him. There was
also evidence in the record from which an inference
could be drawn that the appellants were in an intimate
relationship with the appellee's ward. Where there is a
conflict in the evidence, it is a well settled rule that
this court will not weigh conflicting evidence on appeal.
*Wilson* v. *Reynolds* (1938), 213 Ind. 436, 13 N. E. 2d
218; *Lincoln Nat. Bank & Trust Co.* v. *Parker* (1941),
110 Ind. App. 1, 37 N. E. 2d 5. The judgment of the
trial court will not be set aside on the weight of the

evidence, unless the evidence is all one way and but one conclusion could be reached from the facts proved and that conclusion is adverse to the decision of the trial court. *Wiggam* v. *Rhodes Estate* (1931), 92 Ind. App. 491, 176 N. E. 250. Under the facts in our instant case, we cannot say that only one conclusion could be reached.

The appellants also argue their Specification of Error No. 6, subsections b, e, and f. Specification No. 6 in the motion for a new trial contained seven (7) parts (a, b, c, d, e, f, and g), however appellants have only argued parts b, e, and f, and thus the other four parts of Specification No. 6 are waived. Rule 2-17 (f) of the Rules of Indiana Supreme and Appellate Courts.

Specification No. 6 related to error of law occurring at the trial in that the court refused to permit one Joseph Nyikos, an attorney, to answer certain questions propounded by appellants' counsel.

The evidence in the instant case showed that Joseph Nyikos was acting as a scrivener in preparing the deed for appellee's ward. This court in the case of *Schutz* v. *Leary* (1952), 123 Ind. App. 100, 106 N. E. 2d 705, at 123 Ind. App. page 106, stated:

> "While the qualifications of the privileged communications rule in this state has not been extended to apply to such communications between an attorney and a client in the preparation and execution of a deed, it is apparent upon sound reasoning and a consideration of the authorities that the exception to the general rule regarding privileged communications should apply in the case of the circumstances surrounding the preparation and execution of a deed the same as it does in the case of the communications by a client to an attorney who drafted his will."

The appellants also contend that the conversation was in the presence of third persons, and, therefore, was not a confidential conversation. The three questions which the court refused to permit Mr. Nyikos to answer and which are complained of by appellants, all related to conversations between Mr. Nyikos and appellee's ward and appellants. The uncontradicted evidence does show that appellee's ward, appellants, and Mr. Nyikos were all together in Mr. Nyikos' office at one time during part of the meeting with him. Our Supreme Court in the case of *Hanlon* v. *Doherty et al.* (1886), 109 Ind. 37, 9 N. E. 782, at 109 Ind. page 43 stated:

> "The offered evidence can not be pronounced incompetent on the ground that the communication to the witness was a privileged one. The general rule is, that communications between attorney and client are privileged when they are confidential; but where both parties are present, the communications can not be regarded as confidential."

It should also be noted that the appellee's ward himself testified as to part of the conversation between him and Joseph Nyikos. Our Supreme Court in the case of *Oliver* v. *Pate* (1873), 43 Ind. 132, at page 142, stated:

> "The appellant was a witness on the trial of the case, in his own behalf, and voluntarily testified to his communication to the attorney, which he claims was privileged. Did that remove the injunction of secrecy? The object of extending to him the privilege is, that his communications shall not be disclosed without his consent. It is a personal privilege, and if he makes the disclosure himself, and undertakes to tell what statement he made to his attorney, it ceases to be a secret. Having opened the door himself by testifying to what took place between himself and his counsel

and to the communications between them, he has made it public and thus consented that the attorney may testify in relation to it. It is no longer a secret, any more than if the statement had been made to his attorney in the presence and hearing of others, and with the avowed purpose that it should be heard by them."

See also *Key* v. *State* (1956), 235 Ind. 172, 132 N. E. 2d 143; *Fluty* v. *State* (1947), 224 Ind. 652, 71 N. E. 2d 565.

The questions which the court refused to permit Mr. Nyikos to answer and to which the appellants complain, and the offers to prove, are as follows:

"Q. Did you have a conversation with this grantor, and the grantees in this deed named, concerning the making of this deed?"

OFFER TO PROVE:

"Defendants offer to prove that if this witness is permitted to answer the question, he will say that he did."

"Q. You may state to the Court what the conversation was with reference to this subject."

OFFER TO PROVE:

"The defendants now offer to prove that if this witness is permitted to answer the question, that he would state he did have a conversation with Frank, Joe and Bernice Gorney, concerning the preparation and drawing of this deed and exhibit."

"Q. You may state what was said, if anything, on this occasion by these three people concerning the preparation of this deed of conveyance and exhibit."

OFFER TO PROVE:

"The defendants offer to prove that if the witness is permitted to answer the question, that he would state that these three persons, in the presence of each other, told the witness that Frank Gorney wished to make and execute a deed to

certain land to the other two, Joseph and Bernice Gorney, and that they wished the witness to prepare such a deed."

However whether the trial court was right or wrong in refusing to permit Joseph Nyikos to answer the questions propounded to him by appellants' counsel, we conclude the ruling was harmless due to previous testimony of Nyikos and subsequent interrogation of another witness, being one of the appellants herein.

The first two offers to prove set out above show that if Mr. Nyikos had been permitted to answer, his testimony would have been that he did have a conversation with Frank Gorney and Joseph and Bernice Gorney concerning the preparation and drawing of the deed. The evidence in the record shows that Joseph Nyikos was permitted to testify to a prior question which was: "Did you have a conversation with these persons, all three of them together?" Answer: "Yes." Thus as to the first of the above questions complained of by appellants, it was not prejudicial in our opinion, since that excluded evidence previously had been introduced in the record. *Sanger* v. *Bacon* (1913), 180 Ind. 322, 101 N. E. 1001; *Maryland Casualty Co., etc.* v. *Weiss* (1959), 129 Ind. App. 481, 156 N. E. 2d 644.

The offer to prove on the last two questions complained of by appellants shows that Joseph Nyikos would have testified that these three persons (appellants and appellee's ward) told him that Frank Gorney wished to make and execute a deed to certain land to the other two, appellants Joseph and Bernice Gorney, and that they wished the witness to prepare such deed.

Appellant Bernice M. Gorney testified as follows on cross-examination:

"A. Well, after Uncle Frank was in there a few minutes with Mr. Nyikos, Mr. Nyikos opened the door, and asked us to come in, so Joe and I walked in, and as we walked in Mr. Nyikos says: 'What relation is this man to you'? Joe says: 'That is my uncle'. He says: 'You are his nephew', and Joe says: 'Yes, sir', and he says: 'He wants to deed you his property. He told me he wants to deed his property to you', and just then Mr. Nyikos says 'Why'? And before Joe or I answered, Uncle Frank said: 'Because I want them to have it. They were good to me', and another thing is Grandma more or less gave him an order to deed that property over to Joe and Bernice.

"Q. Did he say that?

"A. Yes."

Appellant Joseph Gorney testified as follows on direct examination:

"A. When he called us in, he said—he didn't say Uncle Frank, he said: 'Frank wants to give you the place—to sign the place over.' He said: 'Are you any relation to him', and I said: 'Yah, he is my Uncle', and he asked my Uncle what I am to him, and he said: 'It is my nephew'.

"Q. What else was said?

"A. Well, he said: 'If you want to do it that way, we will do it.'

"Q. He said he would do it?

"A. He said he would do it.

"Q. What further was said? Was anything said about when it was to be done?

"A. Well, he said: 'I will check the papers over, and you come in Friday to pick them up. It was on the 23rd of June."

Thus the evidence that was excluded in regard to the second and third questions which the appellants complain of was admitted into evidence by the testi-

mony of the appellants. The Supreme Court in the case of *Conner* v. *The Citizens Street Railroad Company of Indianapolis* (1896), 146 Ind. 430, 45 N. E. 662, at 146 Ind. 444, stated:

> "The fifth ground in the motion for a new trial is sustaining an objection to a certain question put to the witness John Simmons. But whether right or wrong, the ruling proved harmless by reason of the fact that other questions were afterward put to the witness in better form that elicited all the testimony that the rejected questions could have elicited."

For the reasons given above, we are of the opinion that the exclusion of evidence by the refusal of the trial court to permit Joseph Nyikos to answer certain questions propounded to him by appellants' counsel was in error, however this improper exclusion was harmless since the facts sought to be established by such evidence were fully established by other evidence.

We have gone over all the questions raised and presented by the assignment of errors and appellants' brief, and find no reversible error.

Judgment affirmed.

Ax, Cooper, and Myers, JJ., concur.

NOTE.—Reported in 181 N. E. 2d 779. Rehearing denied with separate opinion reported in 198 N. E. 2d 1.