# Supreme Court of Judicature

OF THE

# STATE OF INDIANA,

AT INDIANAPOLIS, MAY TERM, 1895, IN THE SEVENTY-
NINTH YEAR OF THE STATE.

---

No. 17,383.

### PORTER ET AL. v. THE CITY OF TIPTON.

MUNICIPAL CORPORATION.—*City.*—*Street Improvements.*—*Secondary Liability of City.*—*Primary Liability.*—*Statute Construed.* It is not the purpose of the statute, commonly known as the "Barrett law," to charge, *primarily,* the cost of the street improvements against the city. The city's liability is but *secondary,* and arises only when it has sold bonds, collected assessments, or otherwise realized the amounts owing from the property benefited, and the contractors have not been paid.

SAME.—*Statute Construed.*—"*Barrett Law.*"—It is the purpose, spirit and language of the act to enable the city to require improvements, to dictate the character thereof, to contract therefor, to enforce the payment of benefits by property-owners, to aid the property-owner in deferring such payments by issuing the bonds of the city, from the proceeds of sales of which to pay the contractor, and from the annual payments of the property-owners upon their assessments to meet the maturing bonds.

SAME.—*When Estimate can not be Increased.*—*Bonds.*—The estimate for improvements can not be increased at the stage of issuing and mar-keting bonds.

(347)

Same.—*Partial Answer.— Theory of Complaint.*—The theory of the complaint being to recover only the cost of improving street and alley crossings, an answer limited to such alleged liability is entire, and not partial.

From the Tipton Circuit Court.

*G. H. Gifford* and *C. H. Gifford,* for appellants.
*Beauchamp & Mount,* for appellee.

Hackney, J.—The appellants sued the appellee in three paragraphs of complaint. The first paragraph sought the recovery of $28,667.94, the alleged cost of improving north Main street, in said city, at the points of intersection with other streets and with alleys.

The second paragraph alleged that a like sum was owing and due appellants for the construction of such improvements, not limiting the claim to the cost of improving intersections; that the city was about to issue bonds from the sale of which to realize a sum for the payment of said claim; that said bonds had been contracted and sold at ten per centum less than the par value thereof and not for their full value; that such sale would not produce a sum sufficient to pay said claim by the sum of $1,200; that the common "council refused to raise said estimate to cover the discount on said bonds," concluding with the following prayer: "Wherefore plaintiffs pray that said common council be ordered to increase said estimate so as to raise funds sufficient to pay plaintiffs' claim and all proper relief."

The third paragraph sought the recovery of $8,000 for the improvements along the line of the lots.

The court sustained a demurrer to the second and third paragraphs, and, upon answer of payment to the first paragraph, there was a trial and finding for the appellee.

The questions arising upon the assignment of error and argument of counsel relate to the sufficiency of the

second and third paragraphs of complaint, and to the answer to the first paragraph of complaint.

The improvement in question was made under what is known as the Barrett law, R. S. 1894, sections 4288 to 4300.

The contract between the appellants and the appellee provided for the payment of the amount of the bid, ''said amount to be collected as provided by law in such cases \* \* and in full compliance with the ordinance providing for the improvement.''

The ordinance was made a part of the contract by express reference, and, by its terms, ''the cost of said improvement of said street, except the portion occupied by street and alley crossings, shall be assessed per lineal foot against the real estate abutting thereon; said assessment, if deferred, shall be paid in ten annual installments, to each of which shall be added interest at six per cent. per annum, payable semi-annually from the date of final settlement hereon and collected as provided by law, bond or bonds shall be issued in anticipation of the collection of said deferred assessments, unless the property owners pay their assessments before the said bond or bonds are issued, all as provided for in the act of the General Assembly of Indiana, approved March 8, 1889.''

All of the preliminary conditions to the issuing of bonds were alleged in each of the paragraphs of complaint in review.

The theory upon which the appellants' learned counsel seek to uphold the claim of a primary liability, as *in personam*, of the city, is that section 4290, *supra*, provides that ''the city shall be liable to the contractors for the contract price of said improvement,'' and that the contract obligated the city to pay the amount of the bid.

This theory is faulty in overlooking the provisions of the contract, and of the law which becomes, by reference and by operation of law, parts of the contract. By the express provisions of the contract the cost of improvement is to be paid from the collections of assessments against the property owners, which assessments may be so deferred as to be payable in ten annual installments with semi-annual interest, and upon bonds issued by the city, as authorized by section 4296, *supra*. It is clearly not the purpose of this law to charge, primarily, the cost of the street improvements against the city. *Quill* v. *City of Indianapolis*, 124 Ind. 292. It is manifest, also, when reading the provision above quoted from section 4290, in connection with the other sections of the act, that the city's liability is but secondary, and arises only when it has sold bonds, collected assessments, or otherwise realized the amounts owing from the property benefited, and the contractors have not been paid. It was the purpose, spirit, and language of the act to enable the city to require improvements, to dictate the character of the improvements, to contract for the improvements, to enforce the payment of benefits by the property owners, to aid the property-owner in deferring such payments by issuing the bonds of the city, from the proceeds of the sales of which to pay the contractor, and from the annual payments of the property owner upon his assessments to meet the maturing bonds. There are other methods of payment to the contractors and by the property owners, but, as we have seen, the contract, through the provisions of the ordinance, permitted the adoption of the bond method of raising the fund, and the ten annual payment method of discharging the bonds by the property-owners. The complaint affirmatively alleges that the property-owners and the city adopted the methods thus permitted.

In our judgment no liability was alleged against the appellee for any sum on account of such improvement. It is said, in argument, that the second paragraph is in the nature of a petition for a mandate. Passing merely formal objections, it does not appear from the allegations of the pleading nor from the citation of any provision of the statute or decision of the courts that authority existed, on the part of the common council, after the confirmation of the report and apportionment of the cost of improvement as provided by sections 4293, 4294, *supra*, to raise estimates or assessments. Section 4294 provides for action upon such report, and for amendments to the assessments.

Such amendments, however, are made in view of a report by a special committee appointed to examine the engineer's report and upon hearings before such committee and the council. They are not made or contemplated after the final apportionment of the cost and assessments thereof against the property. Without such power, given expressly or by necessary implication, it is needless to say it could not be exercised. It is without serious question that mandate would not issue to compel an act unauthorized. The proceedings had passed to the stage of issuing bonds, and the appellants asked that since the bonds were contracted for a sum less than par the "common council be ordered to increase said estimate." Whether such bonds may be sold for less than par, is not a question now before us, and we intimate no opinion with respect thereto, but that the "estimate" may be increased at the stage of issuing and marketing bonds, we think is without sanction. It was not error, therefore, to sustain the appellee's demurrer to each of the second and third paragraphs of complaint.

Appellants suggest that the answer of payment addressed to the first paragraph of complaint was but

National State Bank of Terre Haute *v.* Vigo Co. National Bank *et al.*

partial, since it pleaded payment of the cost of improving street and alley crossings. The theory of that paragraph of complaint was for the recovery only of the cost of improving such crossings, and though the answer was limited, by its language, to that alleged liability, it was entire. That would have been the whole liability properly charged even if the scope of the complaint had been broad enough to have included improvements abutting upon lots. *Quill* v. *City, etc., supra.*

The judgment of the circuit court is affirmed.

Filed May 27, 1895.