## HOLLIDAY ET AL. v. PERRY ET AL.

[No. 5,697. Filed October 9, 1906.]

1. JURISDICTION.—*Parties.*—*Appearance.*—*Filing Demurrer.*—The filing of a demurrer by defendants constitutes a general appearance, and gives the court jurisdiction over the person. p. 594.

2. TRUSTS. — *Resulting.*—*Lands.*—*Grantees.*—*Payment of Purchase Money by Another.*—Under §3398 Burns 1901, §2976 R. S. 1881, a resulting trust may be created: (1) Where the grantee takes the legal title without the consent of the person paying the purchase money; (2) Where the grantee has taken the title, paying the purchase price, in violation of his trust, with money of another, and (3) where the grantee by agree-

ment is to hold the legal title in trust for the person who pays all or a part of the purchase price.  p. 596.

3. TRUSTS.—*Constructive.*—*How Created.*—Courts will declare a constructive trust where necessary in order to work out right and justice, regardless of the intention of the parties.  p. 596.

4. PLEADING. — *Complaint.* — *Trusts.* — *Resulting.* — *Payment of Purchase Money.*—A complaint showing that defendant, by an agreement with plaintiffs, advanced, as a loan to them, their third of the purchase money for a tract of land, sufficiently shows payment thereof by the plaintiffs.  p. 596.

5. TRUSTS.—*Fraud.*—*Refusal to Convey to Person Who Paid Purchase Money.*—The taking of the legal title by defendant to lands partly paid for by plaintiffs upon an agreement, free from fraud, subsequently to convey to them, becomes fraudulent upon his refusal so to convey.  p. 597.

6. PLEADING.—*Complaint.*—*Contracts.*—*Written.*—*Oral Modifications.*—*Sales of Lands.*—*Vendor and Purchaser.*—A complaint showing a written contract by which defendant and plaintiffs agreed to purchase coal lands under certain conditions; that plaintiffs afterward orally agreed that defendant should advance their share of the money and take the legal title to the land and hold as security until payment; that plaintiffs offered to repay said sum but defendant refused to accept or to convey their interest, counts upon a contract in writing for the purchase of such land, the oral agreement as to payment being collateral.  p. 597.

7. VENDOR AND PURCHASER. — *Contracts.* — *Discharge.* — *Real Estate.* — *Purchase Money.* — Where plaintiffs and defendant agreed in writing to buy lands, and plaintiffs borrowed from defendant their part of the money with which to pay for such lands, and such lands were so bought and paid for, such contract was fully performed, such borrowed money in legal effect being theirs.  p. 597.

8. PLEADING. — *Complaint.* — *Theory.* — Every complaint must proceed upon a definite theory.  p. 598.

9. SAME.—*Complaint.*—*Theory.*—*Trial.*—*Demurrer.*—*Appeal and Error.*—The theory of the complaint, acquiesced in by the parties on the trial below, will govern on appeal; but on demurrer for want of facts, a complaint will be held good on appeal if the facts show a cause of action on any theory.  p. 598.

10. SAME.—*Complaint.*—*Facts.*—*Want of Theory.*—A demurrer to a complaint does not lie because of a want of a theory, but for want of sufficient facts.  p. 598.

11. PLEADING. — *Complaint.* — *Fraud.—Averments of.—Facts.*— Averments of fraud are unnecessary in a complaint where the facts stated show actual or constructive fraud.  p. 598.

12. FRAUDS, STATUTE OF.—*Use of.—Perpetration of Fraud.*—The statute of frauds cannot be used for the perpetration of a fraud.  p. 599.

13. EVIDENCE. — *Fraud.* — *Frauds, Statute of.—Equity.*—Where fraud is involved in an equity case evidence will be admitted which the statute of frauds by its terms would exclude, in order to prevent a misappropriation of property.  p. 599.

14. TRUSTS.—*Resulting.—Accounting.—Coal Mines.*—Where defendant fraudulently retained the legal title to, and operated coal mines belonging partly to plaintiffs, and refused to account, or to give an inspection of the books, he may be compelled by a court of equity to account to them for their interests therein.  p. 599.

From Parke Circuit Court; *A. F. White,* Judge.

Suit by Elias S. Holliday and another against Henry W. Perry and another.  From a decree for defendants, plaintiffs appeal.  *Reversed.*

*George A. Knight, J. M. Johns, Howard Maxwell* and *Rawley & Hutchison,* for appellants.

*Puett & McFaddin* and *G. S. Payne,* for appellees.

COMSTOCK, P. J.—The complaint is in one paragraph and alleges that some time prior to January 11, 1896, the defendant Henry W. Perry proposed to the plaintiffs, who were engaged in the practice of law, that if they would prepare and assist him in taking options for the sale or leasing of certain coal and mineral lands in Parke county, Indiana, he would procure said lands to be drilled or otherwise tested for coal and minerals, and if any part of said lands or the coal under said lands was purchased said plaintiffs were to have a one-third interest therein, and said Perry was to have the remaining two-thirds; that plaintiffs accepted said proposition, and prepared and caused to be printed a large number of blank options; that

Perry had an extensive experience in the discovery of coal and in coal mining operations, and represented to these plaintiffs that he knew of a large quantity of land in Parke county which he believed was underlaid with coal, and upon which options for the purchase thereof could be obtained; that afterwards said Perry and plaintiff Byrd went over the territory selected by Perry upon which options were to be procured, and thereafter plaintiffs began the work of securing said options; that they were engaged in said work for more than a year, and spent a large amount of labor, time, and money in procuring options upon about two thousand acres of land; that before all said options were taken said plaintiffs and said defendant Perry, entered into a written contract, a copy of which is filed herewith as 'exhibit A,' and which contract is as follows:

"This contract by and between Henry W. Perry, party of the first part, and E. S. Holliday and George A. Byrd, composing the firm of Holliday & Byrd, party of the second part, witnesseth:

Whereas, said parties have been and still are engaged in taking options upon coal located under certain lands in Parke county, Indiana, all of said parties contributing their time and skill in procuring said options; and, whereas, for convenience, all such options are taken in the name of Henry W. Perry. Now in consideration of the services rendered and to be rendered by said Holliday & Byrd and the further consideration hereinafter stated, it is hereby contracted and agreed that said first party shall furnish two-thirds of all the money necessary to drill said lands and purchase the coal thereunder, and to defray all other expenses connected with fully carrying out the purpose of taking such options; and said party shall furnish the remaining third. It is further agreed that when deeds are taken to such lands, they shall be so drawn as to vest the title to all the coal purchased, two-thirds in said first party and one-third in such second party. It is further agreed that all the profits arising from and growing out of such business of taking options shall be divided in the

proportion of two-thirds to the first party and one-third to the second party, and whatever losses accrue shall be borne in the same proportion.

HENRY W. PERRY.

E. S. HOLLIDAY.

GEORGE A. BYRD."

That after they had procured the options provided for therein and tested the coal, finding that 240 acres was coal land, and the balance not, appellants found that they did not have sufficient money on hand to pay their one-third of the cost of drilling said lands and one-third of the purchase price of said 240 acres, which it had been decided to purchase, and that they would have to borrow money to meet the same, which they could and would have done from persons other than said Henry W. Perry, had not said Henry W. Perry agreed to loan and advance to them the sum needed; that they orally agreed with appellee Henry W. Perry to the modification of the written contract as follows:

"Said Henry W. Perry agrees to loan to them, advance and pay for them, the cost of drilling said land and the purchase price of all lands bought. He shall take the deeds for the lands purchased, in his own name, and hold the plaintiffs' one-third interest therein, as security for the money so loaned to and advanced for plaintiffs, with interest thereon at six per cent per annum. As soon as any one can be found who will lease the land, or lease and mine the coal in said land, said Henry W. Perry is to execute proper leases in his own name and hold one-third interest in any such lease or leases, in trust for plaintiffs. Whenever he collects a sufficient amount of royalty from the lands and the coal mined in said lands, to reimburse him for the money so loaned to and advanced for plaintiffs, or whenever plaintiffs pay him said sum or the balance thereof remaining due him, then said defendant Henry W. Perry agrees to assign a one-third interest in any and all said leases to the plaintiffs, and to convey and deed to them a one-third interest in said lands and coal."

That in pursuance of the terms of said written contract and the oral modifications thereof, as above set out, the parties hereto purchased, under said options, etc. They allege that under these contracts, the written one and parol modification, appellee Henry W. Perry took title to the lands, paid all expenses and the purchase price, entered into possession of the same, leased, rented and operated this land as his own, and has refused to account to appellants for the rents and profits of the coal leased on royalty, or to permit appellants to examine the books, and has generally exercised all the acts of ownership.

It is alleged that the parties purchased under said options certain described pieces of real estate; that said defendant Henry W. Perry leased said lands to Walter Ringo & Co. and to other persons and corporations to these plaintiffs unknown, for the purpose of mining coal thereunder; that said lessees sunk a shaft on said lands and have been continuously, for more than three years last past, mining the coal in and from said lands and paying to said defendant the entire royalty therefor; that said defendants conceal from these plaintiffs the amount of royalty so received under said leases, and refuse to give them any information concerning them; that said lessees, claiming to be under the instructions of said defendant Perry, refuse to inform these plaintiffs how much royalty they have paid said defendants on coal mined, although said plaintiffs have demanded of them such information; that defendant Perry refuses to account to them for one-third of said rent and royalty and refuses to give them information on the subject; that they have no means of ascertaining the amount of said rent and royalty, or what amount, if any, is due said Henry W. Perry, and are without any adequate remedy at law to compel said defendant to account therefor; that they have never received any compensation or reimbursement for the time, labor and money expended in and about the taking of said options as aforesaid; that they are ready and willing

to pay to said Perry any sum that may be due from them as provided in said contract, over and above one-third of the royalty which he has received, upon a proper accounting by him of the amount so received by him; that before the . commencement of the suit plaintiffs demanded an accounting and offered to pay said defendant Perry whatever sum remained due from them as aforesaid, and demanded that he execute to them a deed for one-third of said lands and coal and an assignment of a one-third interest in said leases, but he refused and still refuses to comply with such request; that they are ready and willing to pay to said Henry W. Perry, upon the order of the court, any balance that may be due from them as aforesaid, after an accounting for a one-third of said royalties so received by him. They believe and aver the facts to be, that said Perry has received a sum largely in excess of any amount they owe as aforesaid; that said defendant Perry holds the title to said one-third of said land and coal in trust for them, as security for his advances as aforesaid made, and that said Emma Perry is his wife. Plaintiffs demand that Perry be compelled to account to them, and if, upon said accounting, there should be found to be due these plaintiffs any sum in excess of the amount found due said defendant Perry, they demand judgment against him therefor, and that said defendant be required to reconvey one-third of said real estate, land and coal, and to assign a one-third interest in said leases to plaintiffs, or, upon a failure to do so, that a commissioner be appointed to make such conveyance and assignments, etc.

Joint and several demurrers filed to the complaint—first, upon the ground that the court did not have jurisdiction of the person of either of the defendants, and, second, that the complaint did not state facts sufficient to constitute a cause of action—were sustained. Plaintiffs failing to plead further, judgment was rendered against them for costs. The ruling of the court upon de-

murrers is assigned as error. The filing of the demurrer by appellees constituted their appearance. 2 Elliott, Gen. Prac., §472, and cases cited.

The position of appellants is "that the complaint proceeds on the theory of a trust by implication of law; that is, that the court will imply or raise a trust from the facts alleged and enforce the same, notwithstanding the parol declaration, to prevent the appellees from applying the property held by them in trust to a purpose different from that for which they undertook to hold it, and thus to prevent injustice and fraud." Appellee Henry W. Perry contends that the complaint proceeds upon the theory that the deeds to him vested in him the title to the lands in controversy, charged with a verbal trust as to one-third thereof for appellants, to be conveyed to them under certain conditions. Section 3391 Burns 1901, §2969 R. S. 1881, in effect says that a trust in lands may be created by parol. Section 3396 Burns 1901, §2974 R. S. 1881, reads: "When a conveyance for a valuable consideration is made to one person, and the consideration therefor paid by another, no use or trust shall result in favor of the latter; but the title shall vest in the former, subject to the provisions of the next two sections." The next section (3397 Burns 1901, §2975 R. S. 1881) states the effect of such conveyance as against the creditors of the person paying the consideration therefor, and is not relevant to the section before us. Section 3398 Burns 1901, §2976 R. S. 1881, reads: "The provisions of the section next before the last shall not extend to cases where the alienee shall have taken an absolute conveyance in his own name without the consent of the person with whose money the consideration was paid; or where such alienee, in violation of some trust, shall have purchased the land with moneys not his own; or where it shall be made to appear that, by agreement and without any fraudulent intent, the party to whom the conveyance was made, or in whom the title shall vest, was to hold the

land or some interest therein in trust for the party paying the purchase money or some part thereof."

An implied or resulting trust, under the statute, is created, (1) where a conveyance is taken in the name of the alienee without the consent of the party paying the purchase money; (2) when the alienee, in violation of some trust, has purchased the estate with money not his own; (3) when, by agreement, the party to whom the conveyance was made was to hold the amount in trust for the party paying the purchase money or some part thereof. It appears from the complaint that the legal title was not acquired fraudulently or in violation of any fiduciary duty; but it appears that a certain beneficial interest was not to go with the legal title to appellee. "Constructive trusts are raised by equity for the purpose of working out right and justice, where there was no intention of the party to create such a relation, and often directly contrary to the intention of the one holding the legal title." 1 Pomeroy, Eq. Jurisp. (3d ed.), §155.

In the case before us the trust must apply to the third class. It is the claim of appellee that the complaint is insufficient under this class, because there is neither averment nor pretense that appellants paid any part of the purchase money, nor that appellee, by agreement without fraudulent intent, received the conveyance to hold the land in trust for appellants; and, further, that the demurrer to the complaint was properly sustained, because the contract, upon which it is based, is a parol contract—being partly in writing and partly in parol—and unenforceable under the statute of frauds, because it is a contract for the sale of lands.

The first of the foregoing objections is not warranted by the averments of the complaint. It alleges facts showing a valuable consideration for the consent of appellants to placing the title of the land in said appellee before the conveyance and in legal effect

the payment of one-third of the purchase money. The fact that the transaction was without 5. fraud in its inception, did not prevent its becoming fraudulent upon the subsequent refusal of Perry to perform his part of the agreement. 2 Washburn, Real Prop. (5th ed.), p. 520; 1 Pomeroy, Eq. Jurisp., §155; *Ransdel* v. *Moore* (1899), 153 Ind. 393, 408, 53 L. R. A. 753.

Admitting, only for the purposes of argument, that the suit is brought upon a contract for the sale of land, we must still hold that the contract for that purpose is in 6. writing. The written contract was complete, and the end for which it had been entered into was accomplished. The subsequent, parol agreement extended the time for payment of the sum to be furnished by appellants' giving to appellee security for the money loaned and advanced by Perry to appellants. In short, it simply provided for the manner of payment and how the money was to be furnished. When appellee Perry loaned to 7. appellants the sum necessary to pay one-third, the contract was as completely performed by them as if they had borrowed the money of a third party, instead of Perry, and paid the same to him. The money thus advanced was the money of appellants. Appellants did not lose their rights under the written contract by permitting appellee Perry to take title in his own name to the entire land. Appellee Perry's interests were not changed, nor his title affected by the promise which he made to appellants, and which they accepted and relied upon. Had the contract been carried out by the manual payment of one-third of the value of the land in money, instead of its payment by the loan, it would have been no more a payment, so far as fixing the rights of the parties, than under the agreement stated in the complaint. Had appellee Perry taken title to the whole of the land without the consent of appellants, he could not by so doing have deprived them of

their one-third interest, nor can he by taking title with their consent, when for a valuable consideration, which is clearly shown, he promised to hold the same in trust. The complaint is sufficient to withstand the demurrer upon other grounds. The facts alleged show actionable fraud by Perry.

Every complaint must proceed upon a definite theory. *Cleveland, etc., R. Co.* v. *Dugan* (1898), 18 Ind. App. 435, and cases cited; *Allen* v. *Woodruff* (1880), 96 S. Ill. 11; *Geney* v. *Maynard* (1880), 44 Mich. 578, 7 N. W. 173.

The rule adopted by the trial court, with the acquiescence of the parties, when a trial is had, will govern in the Appellate Court for the purpose of review; but on a demurrer for want of facts the pleading will be sustained if it is good on any theory. *Kneales* v. *Price* (1886), 21 Mo. App. 295; *Darrah* v. *Boyce* (1886), 62 Mich. 480, 486, 29 N. W. 102; *Bennett* v. *Preston* (1861), 17 Ind. 291; *Culbertson* v. *Munson* (1886), 104 Ind. 451; *Yorn* v. *Bracken* (1899), 153 Ind. 492.

The want of a theory in a complaint does not make it ground for demurrer; "but the want of sufficient facts is the only defect in that direction which the statute makes a ground for demurrer." *Scott* v. *Cleveland, etc., R. Co.* (1896), 144 Ind. 125, 32 L. R. A. 154.

If the facts alleged show fraud, either actual or constructive, no positive averments of fraud are necessary. "Fraud indeed, in the sense of a court of equity, properly includes all acts, omissions, and concealments which involve a breach of legal or equitable duty, trust, or confidence, justly reposed, and are injurious to another, or by which an undue and unconscientious advantage is taken of another. And courts of equity will not only interfere in cases of fraud to set aside acts done, but they will also, if acts have by fraud been prevented from being done by the parties, interfere and treat the case ex-

actly as if the acts had been done." 1 Story, Eq. Jurisp. (13th ed.), §187.

It is a general principle, running through the decisions, that the statute of frauds will not lend its aid to the commission of fraud, having been enacted for the purpose of preventing fraud, it will not be made the instrument for shielding, protecting, or aiding the party who relies upon it, in the perpetuation of a fraud or in the consummation of a fraudulent scheme. 2 Pomeroy, Eq. Jurisp. (3d ed.), §921.

So pronounced is the principle, that it has been repeatedly held that where fraud is involved a court of chancery will admit evidence which the statute would in terms exclude, in order to prevent a misappropriation of property. *Catalani* v. *Catalani* (1890), 124 Ind. 54, 19 Am. St. 73; *Ransdel* v. *Moore, supra.*

Appellee Perry has used the property thus acquired, under the facts as averred, with great profit, and has refused to recognize in any way any rights or interest of appellants growing out of the enterprise; has refused not only to convey to them any interest, but to render any account to them of the business growing out of the transaction. However honest may have been the purpose of appellee Perry in entering into the contract, his subsequent conduct in appropriating to his own use and advantage the time, labor and money of appellants, in violation of his agreement as charged (and of course we are now passing only upon the pleadings, and not the evidence), clearly shows bad faith, an appropriation of appellants' property in direct violation of an agreement made for a valuable consideration, exhibiting such facts as constitute, by whatever name it may be called, a trust in favor of appellants. Other objections made to the complaint cannot be sustained. Counsel upon both sides have submitted to the court briefs citing many cases and showing much research. We have given the cases cited due consideration

without referring to many of them in this opinion. Appellants are entitled at least to an accounting.

· Judgment reversed, and· cause remanded, with instructions to overrule appellee Perry's' demurrers to the complaint.

## CONCURRING OPINION.

ROBY, J.—The facts stated in the complaint, given the most favorable possible construction in appellee Perry's favor, show him to hold title to real estate as security for a loan. The conveyance to him by virtue of a contract between appellants and himself, under which appellants were entitled to such conveyance, does not put him in any different position than he would occupy if appellants had taken the conveyance to themselves, and thereafter made a mortgage in the form of a deed upon it. That a conveyance of land, absolute in form, may, as between parties, be shown to be a mortgage, is well established.