KEILMAN, TRUSTEE *v.* CITY OF HAMMOND.

[No. 18,445. Filed October 23, 1953. Rehearing denied December 21, 1953. Transfer denied April 14, 1954.]

*Wendell C. Hamacher* and *William F. Carroll, Jr.,* of Crown Point, for appellant.

*John F. Beckman, Jr.,* former City Attorney of Hammond, *Palmer C. Singleton, Jr.,* City Attorney of Hammond, *Jay E. Darlington, Owen W. Crumpacker, Edmund A. Schroer* and *Crumpacker & Schroer,* all of Hammond, and *Myers, Northam & Myers,* of Indianapolis, for appellee.

ROYSE, J.—Appellant is the owner of certain improvement bonds (commonly known as Barrett Law Bonds) issued by the City of Hammond. He brought this action against appellee to recover monies paid to appellee by property owners to be applied by it to the payment of his bonds.

Appellant's complaint was in four paragraphs. For the purpose of deciding the question presented herein each contains the same averments. After averring the bonds were regularly issued, the complaint is, in part, as follows:

"Plaintiff further alleges that bonds were issued in anticipation of said assessment collections in denominations of five hundred dollars each; that

said bonds were issued in ten equal series, one series payable each year over the ten year period, from funds to be collected annually to be paid in satisfaction of said bonds and the interest coupons, in accordance with the requirements of the respective series, by said city from the interest and principal of the assessments so collected.

"Plaintiff further alleges that from year to year as the assessments accrued, many of the assessments were paid in to the City at the Treasurer's Office and collected by the City; that upon the maturity of each of the respective bonds referred to in this complaint, they were respectively presented to the City Treasurer of the City of Hammond, Indiana, for payment, and the payment of same respectively demanded; that payment was refused; that on or about the first day of December, 1933, the City Treasurer of defendant stamped each of said respective vonds and interest coupons as follows: 'Not paid for want of funds, Henry Heckler, City Treasurer'.

"Plaintiff further alleges that as the installments of special assessments came due from time to time for the payment of the bonds and interest coupons, evidencing the interest on the bonds, some of such assessments were paid; that some of the assessments for the payment of said bonds were defaulted and allowed to remain in default until after said bonds came due, and that said bonds came due December 1, 1933; that at the time said bonds came due a substantial amount of the assessments for the payment of same had been paid by the owners assessed into the treasury of the defendant City for the purpose of paying said bonds, and that said defendant was and is now chargeable therewith; that a substantial amount additional was thereafter paid in to the defendant City of Hammond for purpose of paying said bonds; that defendant city is chargeable therewith; that the bonds heretofore herein referred to are the respective bonds sued upon in each respective paragraph of this amended complaint; that each of the bonds referred to in each separate paragraph of the amended complaint were presented to the City Treasurer of defendant City and payment de-

manded, and full payment refused for want of sufficient funds; that partial payments were made by said City of December 29, 1939; $46.00 to apply on principal and $75.00 to apply on the interest; and that partial payments were again made by the defendant City on the bond sued upon on each paragraph of this amended complaint on January 27, 1942, at which time the sum of $4.00 was paid on each of said bonds; and that on September 25, 1942, the additional sum of $47.68 was paid to apply on each of the respective bonds sued upon in the respective paragraphs of this amended complaint.

"That at the time of said respective payments endorsements were placed on each of said respective bonds in like amounts by said City by its Treasurer, reading as follows:

#### "PARTIAL PAYMENT OF THIS BOND

| Date Paid | Amount Paid | Balance Due |
|---|---|---|
| 12-29-39 | $46.00 | $454.00 |
| 1-27-42 | 4.00 | 450.00 |
| 9-25-42 | 47.68 | 402.32 |

RAY J. MADDEN, TREASURER,
LAKE COUNTY

#### "PAYMENT OF DELINQUENT INTEREST

| Date Paid | From | To | Interest |
|---|---|---|---|
| 12-29-39 | 6-1-33 | 12-1-35 | $75.00 |

RAY J. MADDEN, TREASURER,
LAKE COUNTY

"That the sums so indicated were actually paid on said bonds on the dates so endorsed thereon by said City."

Each bond is then set out in the complaint and the notation of non-payment and partial payment is stamped on the back thereof. It is then averred:

"That there is due the plaintiff from the defendant City of Hammond from the funds paid to and collected by said City as aforesaid on said Bond

10, Series 2, and interest coupons attached, the sum of $447.32 with interest at six per cent per annum from December 1, 1935."

To this complaint appellee demurred on the grounds the complaint did not state facts sufficient to constitute a cause of action. In the memorandum to its demurrer appellee says the complaint shows on its face that it is barred by the ten-year statute of limitations and that it appears on the face of the complaint the action is not within any of the exceptions to the statute of limitations. It says the allegation of payments long after the maturity of the bonds is insufficient because, as a matter of law and fact, the money paid was not the money of the City of Hammond; that even if it was a payment by the City it did not waive the statute because the City Treasurer had no such authority. The demurrer was sustained. Appellant refused to plead over and judgment was rendered against him. The error assigned here is the ruling of the trial court on the demurrer.

Appellant contends his complaint does not show on its face that it does not fall within any of the exceptions to the statute of limitations. He further asserts the statute is tolled indefinitely until the money is paid to the City Treasurer by the property owners. Finally, he says the complaint shows the statute was tolled by the partial payments on the bonds in issue.

It is well settled and the parties agree that unless it clearly appears that the case does not fall within any of the exceptions to the statute the question cannot be raised by demurrer. Flanagan, Indiana Pleading and Procedure, pp. 23-24, §12, Comment 9.

Section 48-4404, Burns' 1950 Replacement, provides, in part, as follows:

"It shall be the duty of the proper officer, as herein designated, to stamp on every such bond and coupon presented for payment the date of such presentation and a statement as to whether the same was paid or not on account of want of funds. Upon request of the holders of any matured bond or coupon, it shall be the duty of the officer charged with the payment thereof to make a record thereof, together with the name and address of the holder, and to notify such holder by mail immediately when funds are available to pay the same. Such notices shall be sent in the order in which requests for notices have been made."

Section 48-4405, Burns' 1950 Replacement, provides:

"No interest shall be paid on any bonds or coupons issued prior to March 16, 1929, after the maturity thereof except from the date on which they are first presented for payment and stamped 'Not paid for want of funds.' It shall be the duty of the proper officer as herein designated to stamp upon every such bond and coupon presented for payment the date of such presentation, and the statement as to whether the same was paid, or not paid, on account of want of funds."

We must first determine when the statute commenced to run. In 54 C. J. S. §108, p. 9, it is stated:

"The general rule, as embodied in most statutes, is that, unless a statute specifically provides otherwise, the statute of limitations begins to run at the time when a complete cause or right of action accrues or arises, or when a person becomes liable to an action, and, according to the general rule which is applicable to any and all kinds of actions in a court, not until that time. It has been said that this rule is never questioned, but that the difficulty lies in determining when the cause of action is to be deemed as having accrued."

To the same effect, 34 Am. Jur., p. 23, §13.

In a negligence action our Supreme Court, in *The Board of Commissioners of Wabash County* v. *Pearson* (1889), 120 Ind. 426, 22 N. E. 134, speaking through Judge Elliott, said: (p. 428)

> "The appellee's cause of action did not accrue until he was injured, and, although the defendant's negligence runs back to 1871, the action is not barred by the statute of limitations. The two elements of the appellee's cause of action are the legal injury and the resulting damages. *City of North Vernon* v. *Voegler*, 103 Ind. 314. The statute did not begin to run until the right of action accrued, and this did not accrue until the two elements came into existence. There is, therefore, no force in the argument that the acts of negligence were committed in 1871, and that the statute then commenced to run, notwithstanding the fact that the appellee was not injured until 1884."

See also: *City of Ft. Wayne* v. *Hamilton et al.* (1892), 132 Ind. 487, 495, 32 N. E. 324; 37 C. J. p. 813, §158; *Moody* v. *Prov. Irr. Dist.* (Cal.), 77 Pac. 2d 253, 255, 85 Pac. 2d 128.

The City Treasurer is authorized by statute to receive payments on these bonds and to make payment to the bondholders. §48-1215, §48-4401, Burns' 1950 Replacement.

These bonds are not the general obligation of the City. However, when the property owner pays all or any part of the assessment to the City, the lien upon the property is to that extent discharged and the City becomes the principal obligor upon the bond *to the extent of the payments received by it.* *Read et al.* v. *Beczkiewicz, Treasurer, et al.* (1939), 215 Ind. 365, 374, 375, 18 N. E. 2d 789, 19 N. E. 2d 465; *City of Bloomington* v. *Citizens National Bank* (1914), 56 Ind. App. 446, 105 N. E. 575; *City of Hammond* v.

*Melville, et al.* (1944), 114 Ind. App. 602, 52 N. E. 2d 845 (Transfer denied).

Applying the foregoing authorities to the question presented here, it seems clear to us that the statute of limitations did not begin to run against appellant until after appellee received payments on the assessments from the property owners and refused appellant's demand for payment of the amount received.

The ten-year statute applies to these bonds. *City of Hammond* v. *Welsh* (1946), 224 Ind. 349, 353, 67 N. E. 2d 390.

If a property owner does not pay his assessments within ten years from date of their last maturity, he may assert the statute as defense to an action on the bonds. Under such circumstances the City is not and never was liable for the payment of the bonds. It seems to us it would be unconscionable to say that where a property owner after the statute had run, determined not to take advantage of his personal privilege and paid the money to the proper city official, that then the City could retain this money and refuse to pay the bondholders the amount paid in. Yet this is the contention of appellee here.

The complaint herein avers these bonds were presented to the City Treasurer for payment and payment was refused; that on or about the 1st day of December, 1933, the City Treasurer, as provided by statute, stamped these bonds "Not paid for want of funds"; that prior to and after said date substantial payments had been made to the City Treasurer for the purpose of paying said bonds; that thereafter, in 1939 and 1942, partial payments were made by the City Treasurer to appellant on these bonds. In this case we must consider these averments as true.

Therefore, when the City Treasurer had received payments for these bonds prior to December 1, 1933, and on that date stamped them as not paid for want of funds, he concealed the truth from appellant and thereby was guilty of at least constructive fraud. Fraud stays the statute of limitations. *Shipman, Executor* v. *Shipman, Guardian* (1934), 99 Ind. App. 445, 192 N. E. 849; 54 C. J. S. 219, §206.

Appellee contends the complaint is bad because it is indefinite and uncertain. However, it did not file a motion to require appellant to make his complaint more specific, etc. *Wayne Works* v. *Hicks Body Co., Inc.* (1944), 115 Ind. App. 10, 22, 55 N. E. 2d 382; *Wabash R. Co.* v. *Gretzinger* (1914), 182 Ind. 155, 162, 104 N. E. 69.

For the reasons herein stated, we are of the opinion the complaint does not show on its face that it does not fall within any of the exceptions to the statute. The demurrer was improperly sustained.

Judgment reversed, with instructions to the trial court to overrule the demurrer.

Crumpacker, J., not participating.

### ON PETITION FOR REHEARING.

ROYSE, J.—Appellee has filed a petition for a rehearing in this case. It is voluminous and filled with specious argument that is in no way germane to the question decided in our original opinion.

It first contends that the cases of *Read et al.* v. *Beczkiewicz, Treasurer, et al.* (1939), 215 Ind. 365, 18 N. E. 2d 789, 19 N. E. 2d 465; *City of Hammond* v. *Melville, et al.* (1943), 114 Ind. App. 602, 52 N. E. 2d 845; *City of Hammond* v. *Welsh* (1946), 224 Ind. 349, 67 N. E. 2d 390, cited in our original opinion does not sustain our holding that the statute of limitations did not begin to run against ap-

pellant until after appellee had received payment from the property owners on the assessments. It contends those cases hold the city is only liable when there is a misapplication or diversion of Barrett Law Funds and that the complaint did not allege such misapplication or diversion.

In the Read case, *supra,* our Supreme Court said, at pp. 375, 376:

> "When the assessments are paid to the city, the lien upon the property is to that extent discharged, and the city becomes the principal obligor upon the bond *to the extent of the payments of assessments received by it* . . . The bondholder has no control over the funds paid to the city. Once they are received, the city becomes the principal upon the bond, *and the funds are the property of the city.* In collecting the assesments the city does not act as the agent of the bondholder. It does not hold the funds as a mere agent. In issuing the bonds it binds itself by contract, and the statute becomes part of the contract, and under the statute *the city becomes liable to the extent of collections made.* In levying the assessments the city exercises the sovereign power of taxation. *The bonds are the city's bonds and not the bonds of the property owner.* They differ from general obligations only in that the city's liability to pay is limited by the statute, and hence by the contract to amounts actually collected, plus certain other items hereafter noted." (Our emphasis.)

It seems to us this is a clear, precise, unambiguous statement as to when and under what circumstances the city becomes liable to the bondholder. There is nothing in the opinion that would lend the slightest support to the contention of appellee that the city becomes liable *only* when there is a misapplication or diversion of the funds collected.

The Supreme Court in the Read case, *supra,* cited as authority and approved the sound reasoning of this

court in *City of Bloomington* v. *Citizens National. Bank,* 56 Ind. App. 446, 105 N. E. 575 on this question. There appellee brought an action against the city to recover assesments collected by it on bonds owned by appellee. The city filed a second paragraph of answer in which it admitted its treasurer had collected these funds. It then averred said treasurer wrongfully and unlawfully converted and retained such funds for his own use. It further avers the treasurer executed a bond upon which he was liable for the funds so collected and that the principal and sureties on said bond were solvent, etc. The trial court sustained a demurrer to this paragraph of answer. In sustaining the action of the trial court, we said:

"The city cannot avoid the payment of these bonds upon any technical construction of the duty of its officials as the agent of the one party or the other. The city received the money in the usual way, through its properly authorized official. Upon its receipt *it became the duty of the city to see to it that it was applied in the proper way to the payment, in this instance, of the bonds in suit.* The failure to do this renders the city primarily liable. The city will not be discharged from its obligation to pay this debt because one of its officials, in this case the city treasurer, misappropriates the funds in his custody. To so hold would be to destroy in a large measure the beneficial operation of the public improvement statute, and likewise encourage neglect of city governments in the proper discharge of their official duties. While it is no doubt true that the city may recover from the bondsmen of the city treasurer who has misappropriated the funds any amount of money so misappropriated, it is equally true that when the money is paid into the city treasury, *the city is primarily liable to the holder of the obligations sued on in this action. Indiana Bond Co.* v. *Bruce* (1895), 13 Ind. App. 550, 41 N. E. 958; *City of Huntington* v. *Force* (1889), 152 Ind. 368, 63 N. E. 443; *Porter*

v. *City of Tipton* (1895), 141 Ind. 347, 40 N. E. 802". (Our emphasis).

The last cited cases hold that the city becomes liable to the contractor for public improvements only after it has sold the improvement bonds.

In the Welsh case, *supra,* at p. 351, the Supreme Court said:

"When installments of assessments were collected the city became primarily liable on the bonds entitled thereto for the amount of the collections *notwithstanding misapplication* of such collections to owners of other bonds". (Our emphasis).

The word "notwithstanding" has a well understood meaning. It means: "in spite of"; "despite." Webster's New International Dictionary. In other words, the court in that case said that "despite" the fact, or "in spite of" the fact that the funds had been misapplied the city was liable. But appellee would change this clear term to mean that the city was liable only *because* the funds were misapplied. Such a construction would pervert the clear intent of our Supreme Court.

The Melville case, *supra,* was decided on the authority of the Read case, *supra.*

From the foregoing it will be seen that there is no merit to appellee's contention that the Read case, *supra,* initiated a legal fiction which was only applicable where there has been a misapplication or diversion of the funds collected by the city. It seems clear to us that for more than fifty years it has been the rule that when the city receives funds either from the sale of the bonds, or in payment of the property owners' assessments, it becomes directly liable to the party or parties entitled thereto. Of course, as pointed out in our original

opinion, the city is liable only to the *extent of payments received by it.*

Appellee next says our decision "ignores the fact that appellant under the facts stated in his complaint, has a remedy by way of mandamus against the ■ reluctant County Treasurer" and therefore contravenes a ruling precedent of the Supreme Court, citing: *Conter, Treasurer* v. *Lincoln National Life Insurance Company* (1937), 212 Ind. 125, 8 N. E. 2d 232. The petition for rehearing is the first time appellee has made such contention. In that case appellee brought an action to mandate appellant to pay it as the owners of all bonds of certain special assessment bond issues. The action was brought pursuant to the provisions of the Acts of 1935, ch. 17, pp. 1526, 1533, §48-4406, Burns' 1950 Replacement, providing as follows:

> "Whenever it shall be established to the satisfaction of any officer of the city or town whose duty it is to disburse payments made by property owners to owners of bonds issued on any public improvement that any person, firm or corporation is the owner and holder of all the outstanding bonds on any such public improvement on which payments have been made by property owners, it shall be the duty of such disbursing officer upon demand of such bondholders to immediately pay to said bondholders all the payments made by such property owner, or property owners. Such payments shall be made to such bondholders upon demand notwithstanding the fact that part of such bonds may not yet be due. Whenever any such bonds are not yet due any payments so made to such bondholder shall be entered as a credit upon said bonds, or the coupons thereto attached. The interest on such bonds shall be reduced in accordance with any payment of principal credited thereon."

Appellant's demurrer to the complaint was sustained and the Supreme Court in sustaining that action, said:

"It seems clear that the language of the statute puts upon the proper disbursing officer the imperative duty to pay over to the *'owner and holder of all the outstanding bonds on any such public improvement* on which payments have been made by property owners.' And we believe the legal effect of the language of the statute is to give a bond-holder *who comes within the terms of the statute* the right to compel, by an action of mandate, the proper disbursing officer to pay over 'payments . . . made by property owners.' " (Our emphasis).

It is difficult to understand by what process of reasoning appellee can assert our decision contravenes the rule stated in that case. There was no question there of the statute of limitations. In this case there is no allegation that appellant was the owner of all the bonds of the special assessment bonds. Under the provisions of the statute quoted above, mandate only applies where all of the bonds are owned by one person, firm or corporation.

Appellee further contends that our opinion contravenes the ruling precedent of the Welsh case, *supra,* which held the ten-year statute of limitations applies to these bonds. In our original opinion we cited that case and held the ten-year statute was applicable. In that case the court stated *the record* showed the action was started October 23, 1944 and therefore bonds falling due before October 23, 1934 were barred. There the Supreme Court was not considering the sufficiency of the complaint against a demurrer based on the statute of limitations. Appellee herein has not contradicted our statement in the original opinion—*"that unless it clearly appears that the case does not fall within any of the exceptions to the statute the question cannot be raised by demurrer."* (Our emphasis.) The complaint herein avers that before and after the bonds matured appellee received payments

from the property owners on these assessments. Considering these averments as true, as we must, the statute, as stated in our original opinion, could not and did not commence to run against appellant until appellee received such payments. In *Read* v. *Beczkiewiscz, Treasurer, supra,* at pp. 380, 381, the Supreme Court said:

> "If delinquency interest was paid by the property owners, it must be paid to the bondholders whenever their bonds are presented. If the property owners paid only the principal and interest to the date of payment, whether payment was made before maturity or thereafter, and the amount of the principal and interest received is paid to the bondholder upon the first presentation of the bond, he can claim no more. *But if principal and interest have been paid to the city, and the bond is presented for payment and not paid, the city is liable not only for the interest received, but also for interest from the date of the presentment of the bond for payment until paid.*" (Our emphasis).

In considering the sufficiency of this complaint we believe the holding in that case is direct authority for our decision.

It is next asserted that our holding that the stamping of the bonds "not paid for want of funds" when in fact payments had been made by the property owners to the city, was at least construction fraud which would stay the statute of limitations, contravenes the ruling precedent of the case of *Kimes et al.* v. *City of Gary et al.* (1946), 224 Ind. 294, 66 N. E. 2d 888. It bases this contention on the statement in that case that the relation between the city and a bondholder is contractual. It then says a mere creditor has no right to compel his debtor to account in equity in the absence of any trust relationship between them. The Read case, *supra,* held the relationship between the bondholders and city was not a trust. There is nothing in our original opinion which gives even a slight inference

that we considered there was a trust relationship in this case. This was not an action for an accounting.

In the case of *Budd* v. *Board of County Commissioners of St. Joseph County et al.* (1939), 216 Ind. 35, 22 N. E. 2d 973, no trust was involved. In speaking of constructive fraud the Supreme Court said:

"Fraud may be actual or constructive. Constructive fraud is a breach of legal or equitable duty which, irrespective of the moral guilt of the fraud feasor, the law declares fraudulent *because of its tendency to deceive others, to violate public or private confidence*, or to injure public interests. 26 C. J. p. 1061; *Gorham* v. *Gorham* (1913), 54 Ind. App. 408, 103 N. E. 16. Such a situation may arise when the conduct under inquiry is so manifestly wrong and prejudicial to the public interest as to create a conviction that it was the result of fraud and a plain disregard of public duty. *Robling, et al.* v. *The Board of Commissioners of Pike County, et al.* (141 Ind. 522, 40 N. E. 1079). While fraud is never presumed, if the facts alleged show fraud, either actual or constructive, no positive averments of it are necessary. *Holliday* v. *Perry* (1906), 38 Ind. App. 588, 78 N. E. 877." (Our emphasis).

In the case of *Drake et al.* v. *Eggleston* (1952), 123 Ind. App. 306, 108 N. E. 2d 901 (Transfer denied), no trust was involved. This court, speaking through Judge Crumpacker, said, in part:

". . . the word 'fraud' cannot be limited to a situation where one entertains a preconceived design to circumvent or cheat another. It includes a breach of duty, independent of moral guilt, which the law declares fraudulent because of its tendency to violate confidence *or deceive others.*" (Our emphasis.)

We are of the opinion the allegations of the complaint are sufficient to show constructive fraud. Our opinion

on this subject follows the Welsh case, supra, in which our Supreme Court rejected the contention of the appellants that appellees were estopped from asserting their claim because they had acquiesced in the payments for a period of fifteen years. Speaking on that question, the court, at pp. 354, 355, said:

"To meet the requirements of knowledge appellant contends that the books and records in the treasurer's office show the facts and that, these being public records, appellee is charged with notice of the facts so shown. We do not believe that a citizen may be charged with constructive or implied knowledge of every figure in the city treasurer's complicated books and records or with knowledge of the source of every dollar paid to him over the counter in the treasurer's office simply because he has the right to examine the complicated accounts in the treasurer's office. He cannot reasonably be required to go behind the free and voluntary acts of a responsible bonded public officer acting in the course of his public duties and, if qualified, check his books and accounts to determine the validity of a proposed transaction before he dare proceed with it."

We feel the foregoing is particularly applicable in this case. Furthermore, it is based on principles of public policy and sound reason. If the converse were true it would place almost insurmountable difficulties to the sale of Barrett Law bonds and thereby jeopardize the very object of the statute.

Appellee further contends that our statement that—

"If a property owner does not pay his assessments within ten years from date of their last maturity, he may assert the statute as defense to an action on the bonds. Under such circumstances the City is not and never was liable for the payment of the bonds. It seems to us it would be unconscionable to say that where a property owner, after the statute had run, determined not to take advantage of his personal privilege and paid the money to the

"proper city official, that then the City could retain this money and refuse to pay the bondholders the amount paid in. Yet this is the contention of appellee here."

creates a new statute of limitations with reference to suits in foreclosure against property owners.

In the Read case, *supra,* at pp. 384, 385, the Supreme Court said:

"In case assessments are not paid the bondholder has three remedies. The property may be sold as for delinquent taxes, he may bring an action to foreclose the lien against the property, or he may sue and recover judgment against the property owner who signed the waiver."

See also: *Englehart's Estate et al.* v. *Larimer et al.* (1937), 211 Ind. 218, 5 N. E. 2d 304; *Feder, Receiver* v. *Gary State Bank et al.* (1934), 98 Ind. App. 513, 186 N. E. 379 (Transfer denied).

There is nothing in the above quoted statement from our original opinion that in any way indicates we were referring to foreclosure proceedings. We were merely adhering to the long and well-established elementary principles referred to in the cited cases and the authorities cited therein.

Appellee next asserts "it is unconscionable for the taxpayers in the city to be required to pay special improvement bonds issued over thirty years ago where no taxpayers in the ensuing thirty years have received any benefits from the improvement, and its duly elected officials never contracted to pay the bonds in the first place."

There is nothing in our original opinion which would lead reasonable men who understood the English language to assert we held the taxpayers were liable for the payment of these bonds unless the property owners had first paid the city the amount

of their assessment. We stated then, and again reiterate, that if a property owner pays the city treasurer part or all of his assessment after the statute of limitations has run, the city is liable to the bondholder for the amount paid by the property owner. That is the holding of the Read case, *supra*, and other cases cited herein, which cases likewise hold these bonds are the city's bonds.

Finally, for reasons which we do not understand appellee devotes more than seven pages (six of which are single spaced) of its petition to a recitation of the findings of fact in the case of *Gilkison et al.* v. *Darlington et al.* (1952), 123 Ind. App. 28, 106 N. E. 2d 473. They do not contend the decision in that case has anything to do with the question before us here. They say it is an example of what unscrupulous attorneys will do for financial gain. There is nothing in that case which indicates this court regarded the Read case, *supra*, and the other cases following it, as creating some kind of hybrid legal fiction. We did in that case reverse the action of the trial court in permanently enjoining the bondholders from prosecuting the actions they brought in the Lake County Courts.

Because of the subtle misconstruction appellee has placed on the decisions of the Supreme Court and this court in reference to Barrett Law bonds, we have analyzed and quoted in some detail those cases. In our opinion they have established a rule of property which we neither have the authority nor inclination to change. In doing this there is a danger that the import of our original opinion and decision may be overlooked. Our decision merely holds that a demurrer to the complaint in this case did not properly raise the question of the statute of limitations. There is in this jurisdiction a well-established procedure for raising such a question.

Our decision has not foreclosed the right of appellee to follow this procedure.

Petition for rehearing denied.

Achor, J., concurs in result with opinion to follow.

Crumpacker, C. J., not participating.

Kelley, J., dissents with opinion.

Bowen, J., concurs in dissenting opinion.

### CONCURRING OPINION ON REHEARING

ACHOR, J.—Concurring with the Majority Opinion.

The law is now well settled in this state that where a municipality has collected public assessments against which Barrett Bonds are outstanding, the City becomes primarily liable to the bondholders for the amount collected and it is immaterial that such funds are lost by failure of a depository, by misapplication or misappropriation and that, except under special circumstances, as provided in §48-4406, Burns' 1950 Replacement, action against the City upon said bonds for the amount collected is a proper remedy. *Read et al.* v. *Beczkiewicz, Treasurer, et al.* (1939), 215 Ind. 365, 18 N. E. 2d 789, 19 N. E. 2d 465; *City of Hammond* v. *Melville, et al.* (1943), 114 Ind. App. 602, 52 N. E. 2d 845; *City of Hammond* v. *Welsh* (1946), 224 Ind. 349, 67 N. E. 2d 390. It has also been determined that the action being on the written contract of the bond, and not in account, the 10 year statute of limitations (§2-602 Fifth, Burns' 1946 Repl.) is applicable. *City of Hammond* v. *Welsh, supra.*

In this case, the sufficiency of appellant's complaint is challenged by demurrer. The specific ground for demurrer now urged by appellee is that the action is barred by the statute of limitations. The rule in this state as to the effect of pleading the statute of limitations by demurrer has been stated as follows in the

case of *Charters* v. *Citizens Nat. Bank* (1925), 84 Ind. App. 15, 19, 145 N. E. 517:

". . . It has frequently been held by the courts of appeal, and is a well-established rule, that where there are exceptions to the statute of limitations, and it is desired to defend on the ground that the action is barred by the statute, the question cannot be raised by demurrer to the complaint. The statute must be pleaded in bar of the action, unless it affirmatively appears from the complaint that the cause does not come within any of the exceptions. *Pence, Exr.* v. *Young* (1899), 22 Ind. App. 427, 53 N. E. 1060; *Roberts* v. *Smith* (1905), 165 Ind. 414, 74 N. E. 894. . . ."

Therefore, the question which this court is required to determine is whether facts affirmatively appear from the face of the complaint, not only that there has been the required statutory lapse of time but that the case is not within any of the exceptions to the statute.

The allegations in the case before us are that the bonds became due from December 1, 1931, to December 1, 1933, and that substantial payments had been made, both *before* and *after* due dates thereof, and that each of the bonds sued on had been presented to the City Treasurer for payment as they became due but that full payment had been refused for want of sufficient funds and, accordingly, had been stamped "Not Paid for want of funds" by the City Treasurer. That partial payments were made to the bondholders on December 29, 1939, January 27, 1942, and September 29, 1942.

There was no general obligation on the part of the City to pay the bonds sued on. The bondholder's right of action against the City accrued when the bonds became due and *payment had been made* on the assessments for the payment of the same. 54 C. J. S., p. 9; *The Board of Commissioners of Wabash County* v. *Pearson* (1889), 120 Ind. 426, 22 N. E. 124. There-

fore, the statute did not begin to run until such payment had been made.

In the case before us the complaint loosely alleges that payments were made *after* the date of maturity of the bonds sued upon. Whether such payments were made one year or seventeen years prior to the filing of this action does not appear on the complaint. Appellee did not ask that the complaint be made more specific. Therefore, there is nothing in the complaint to fix the time when the statute began to run as to the payments made *after* maturity. Consequently, it cannot be said with certainty from facts appearing on the face of the complaint that this action was barred by the statute of limitations as to payments made "after" maturity and within 10 years prior to the filing of this complaint.

Furthermore, we cannot say that it "affirmatively appears from the complaint that the cause does not come within any of the exceptions" of the statute. It appears from the complaint that substantial payments had been made on said bonds *prior* to their date of maturity; that thereafter the holders thereof presented the same to the City Treasurer for payment but that payment on said bonds was refused "for want of funds" and they were accordingly stamped "Not paid for want of funds," although substantial payments had, in fact, been made on the assessments therefor when due. This representation was an affirmative act which hid the truth, mislead the appellant and prevented discovery by him of the fact of payment. Therefore, it constituted "concealment" within the meaning of §2-609, Burns' 1946 Replacement, which is a statutory exception to the statute of limitations. *Charters* v. *Citizens Nat. Bank, supra; Stone, Administrator* v. *Brown et al.* (1888), 116 Ind. 78, 18 N. E. 392; 56 C. J. S., p. 219.

Although such "concealment" allegedly occurred in 1933, material facts regarding any "notice" thereafter

to appellant by the City Treasurer, as provided in §48-4404, Burns' 1950 Replacement, and material facts regarding discovery of such concealment by appellant, "or the exercise of diligence" by appellant to make such discovery, do not appear in the complaint. See *Marengo Cave Co.* v. *Ross* (1937), 212 Ind. 624, 10 N. E. 2d 917. Therefore, we are not able to determine when, if at all, the statute of limitations again began to run after the "concealment" above discussed. The appellee did not ask that the complaint be made more specific in order that these facts be made to appear.

We express no opinion as to whether the statute of limitations was, in fact, tolled by said concealment and that appellee is now liable for any or all of the funds so received and so concealed. We do conclude, however, that the facts constituting concealment were sufficiently alleged to raise that issue and that other facts alleged were not sufficient to show that the case does not now fall within that exception to the statute. Therefore, the demurrer, grounded upon the statute of limitations, was erroneously sustained.

### DISSENTING OPINION ON PETITION FOR REHEARING

KELLEY, J.—A careful review of our initial opinion in this case, and the indulgence of sober reflection and intensive research have convinced me that this appeal should be reconsidered and the judgment appealed from affirmed.

The real and only question we decided is stated in the next to last paragraph of the opinion. I am now impressed that we failed to confine our opinion to the question decided, that we erroneously decided the same, and that we went far afield in the presentment of our reasons therefor.

It appears to me that we ventured opinions on sub-

jects and matters unrelated to and not required for the conclusion reached. They include:

(a). That notwithstanding the rule established in the case of *City of Hammond* v. *Welsh* (1946), 224 Ind. 349, 67 N. E. 2d 390, the statute of limitations did not start to run until appellee received payments from assessed property owners and refused appellant's alleged demand for payment thereof.

(b). That so long as assessments remain unpaid there is no time limitation to the liability of municipalities on improvement bonds and coupons issued by them.

(c). That the liability of assessed property owners is subject to the ten year statute of limitation.

(d). That the provisions of §48-4404, Burns' 1950 Replacement, make it the duty of the City Treasurer to notify the bondholder of available funds if a request therefor was made by the bondholder. The complaint contains no allegation of such request by appellant.

(e). That where it is alleged that the City Treasurer had received assessment payments prior to the due date of the improvement bonds, the stamping of such bonds "Not paid for want of funds" by the Treasurer on the due date thereof, rendered the appellee guilty of constructive fraud which tolled the running of the statute of limitations.

(f). That as the appellee made no motion in the lower court to make appellant's complaint more specific, the contention of the appellee that the complaint is bad because it is indefinite and uncertain cannot prevail.

The consideration and rendition of opinion on such aforementioned matters, which appear unessential to the question actually decided, seems fraught with grave possibility of confusion, misinterpretation, and legal uncertainty.

The main opinion states, in effect, that the demurrer to appellant's complaint was improperly sustained because such complaint does not show on its face "that it does not fall within any of the exceptions to the statute." Upon reexamination of the opinion, I am unable to find any exceptions referred to that did not appear on the face of the complaint. Two sections of our statutes were cited and quoted, apparently on the basis that they constituted exceptions to the running of the limitation statute which appear not on the face of the complaint. They are §48-4404 and §48-4405, Burns' 1950 Replacement.

Said §48-4404 provides for the stamping of the presented bonds and coupons. Appellant's complaint alleges this was done. The latter part of said section provides that "upon request" of bondholders, notice shall be sent them when funds are available. Appellant's complaint contains no allegation that he made such "request."

Said §48-4405 also provides for the stamping of the bonds and coupons and appellant's complaint shows this was done.

In my opinion neither of said statutes provides any matter which can be considered to have any influence or bearing on the running of the statute of limitations or which forms an exception thereto.

It may be asserted that the constructive fraud charged to appellee in the main opinion constituted an exception to the limitation statute not apparent in the complaint. However, the facts which gave rise to the declaration of constructive fraud were, in fact, alleged in the complaint. Therefore, it would be most difficult to maintain that such asserted exception did not appear on the face of the complaint.

If it be conceded that the constructive fraud charged to appellee does not appear on the face of the complaint,

yet, in my opinion, such charge against appellee is unjustified and erroneous. The reasons which impel my view are these:

(1). The relationship between the appellee and appellant is that of debtor and creditor, and no position of trust or confidence is involved. No facts are alleged to show a breach of any legal or equitable duty or a preconceived design to cheat or deceive.

(2). The presentment by appellant of his bonds and coupons and his procurement of payments thereon on December 29, 1939, January 27, 1942, and September 25, 1942, are incompatible with and in contradiction of any theory of concealment by appellee.

(3). Appellant had equal means with appellee of knowledge concerning assessment money received by appellee since the public records required by law were available to both. It follows that information concerning payments of assessments could not have been concealed from appellant by appellee, unless appellant did not take the time to inform himself. The holding in the Welsh case, *supra,* does not counter this. In that case the court was not considering facts which would support a charge of constructive fraud. The court, in considering the rule of "estoppel by acquiescence," where the urged acquiescence was of many and complicated accounts over a period of 15 years, held that a citizen cannot "reasonably" be required to go behind the acts of a responsible "bonded" public officer and check his books and accounts to "determine the validity" of a "proposed transaction." Such is not this case. It would have been a simple matter for appellant to have examined *one* record, that is, the account record of payments received on the *one* assessment laid for the payment of the series of bonds held by appellant.

(4). There appear no averments in the complaint and no finding in our opinion that the appellee practiced

any trick, artifice, or other act which prevented appellant from ascertaining the truth about assessment money paid to appellee.

(5). The statutes (§48-4404 and §48-4405, Burns' 1950 Replacement), contain no matter warranting an interpretation that the stamping of bonds and coupons, as therein required, constitute any representation sufficient to support a charge of concealment. The language of §48-4404 reflects that the purpose of the stamp therein required was to obviate error and duplicate payments by making a record on the original bonds and coupons. It is noted that the stamp must show the *date of presentation* and whether the obligations were *paid* or *not paid*. Upon subsequent presentment for payment, this information is available to the officer from the bond and coupon itself. §48-4405 requires a stamp in order to authorize the payment of interest and fix the time from which such interest can be computed and paid on matured bonds and coupons issued prior to March 16, 1929.

It is my opinion that the complaint under examination herein fails to state a cause of action against the appellee without reference to any question concerning exceptions to the limitation statute which are not apparent on the face of the complaint. The action undertaken to be stated in this complaint is predicated solely upon the claim that appellee is liable *on the improvement bonds and coupons* sued upon. The allegations admit of recovery upon no other theory.

According to the complaint, the bonds became due December 1, 1933. The complaint was filed February 1, 1946. Under the rule established in the Welsh case, *supra,* any liability of appellee *on said bonds and coupons* ceased and determined on December 1, 1943, and the right of action on such bonds and coupons simul-

taneously expired. This rule is forcibly stated in the Welsh case referred to. The court, in that case, on page 352 of the official reports, was referring to the liability of the City of Hammond for misapplied collections, under the principles and rules found in *Read* v. *Beczkiewicz* (1939), 215 Ind. 365, 18 N. E. 2d 789, and said:

". . . the City is liable to the holders of the bonds which were entitled thereto, *unless recovery is barred . . . by some statute of limitation . . .*"

The court then proceeds, in the second paragraph following the above quoted portion, to hold that the ten year statute of limitations applied and that the bonds which fell due ten years before the action was started were barred. In short, the court definitely holds that the city is liable to "holders of the bonds" *unless* the bonds are barred. It is important to compare the factual situation in that case, as regards the running of the statute, with the holding in our opinion with regard to the running of the statute. In the ·Welsh case, the first bonds fell due December 1, 1927 and the last bonds fell due December 1, 1936. During that period of ten years, the treasurer made payments "from time to time" on the wrong series of bonds with the result the plaintiffs' bonds were not liquidated as provided by the Barrett law. Yet, the court *did not hold* that such misapplications "from time to time" had the effect of tolling the statute or setting the time when it began to run. Without regard to the time of such misapplications the court held that the statute runs from the *due date* of the bonds. In our opinion, we hold that the statute did not begin to run "until after" the appellee "received payments" on the assessments and "refused" appellant's demand for payment. (See Pt.

4 of the main opinion.) Thus, it seems to me, we directly contravene and alter the rule laid down by the Supreme Court in the Welsh case.

Assuming, without concluding, that the facts stated in the complaint are sufficient to demonstrate a liability of appellee, such liability is not *on the bonds and coupons*. No action *on such bonds and coupons*, can be, in my opinion, properly maintained after December 1, 1943. The right, if any, of appellant to proceed for recovery upon some other theory merits no consideration on this appeal.

The pronouncements made in our initial opinion render the municipalities of this state, which have issued improvement bonds, subject to liability, assertion of liability, demands, complexities, harassment, and litigation thereon without limit, *ad infinitum*. *Infinitum in jure reprobatur*. I cannot find my way clear to further support that doctrine.

The conviction weighs upon me that the ruling of the trial court was proper and that the judgment should be affirmed.

NOTE.—Reported in 114 N. E. 2d 813.

Rehearing denied 116 N. E. 2d 515.